Patricia Rose **BEUTTENMULLER, an Infant, by Paul A. Beuttenmuller, Next Friend, and Paul A. Beuttenmuller, Appellants,**

v.

**VESS BOTTLING COMPANY OF ST. LOUIS, and The Great Atlantic and Pacific Tea Company, Inc., a Corporation, Respondents.**

No. 54373.

Supreme Court of Missouri,
Division No. 1.

Dec. 8, 1969.

Gerritzen & Gerritzen, Ray A. Gerritzen, St. Louis, for plaintiffs-appellants.

Louis W. Riethmann, Ralph K. Soebbing, Thomas E. Fitzgibbons, St. Louis, for defendant-respondent, Vess Bottling Co.

J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondent, the Great Atlantic & Pacific Tea Co.

HENRY I. EAGER, Special Commissioner.

Plaintiff Patricia Rose Beuttenmuller, twenty-six months old at the time of her injury and approximately seven years old at trial, brought suit against The Great Atlantic and Pacific Tea Company, Inc., and Vess Bottling Company of St. Louis for injuries sustained when a bottle of Vess 3–V Cola supposedly exploded in an A & P Store. The amount of her prayer was $25,000. In a second count her father sought to recover $2000 for his medical expense, past and future. The injury occurred on Monday, October 7, 1963. When we use the term "plaintiff" in the singular we are referring to the child. The trial court sustained a motion of A & P (as we shall hereafter designate it) to dismiss both counts as to it on the ground that no claim was stated upon which relief could be granted. Plaintiffs appealed, and this court dismissed the appeal as premature since

the litigation had not been disposed of as to all parties. Beuttenmuller v. Vess Bottling Co. of St. Louis, et al., Mo., 395 S.W. 2d 204. Thereafter the case was tried as to Vess (another abbreviation which we shall use), and at the close of plaintiffs' evidence the court directed a verdict for that defendant and entered judgment thereon. Plaintiffs thereafter took an appeal from that judgment and from the prior judgment of dismissal, so that both judgments are now here for disposition.

It will be necessary to set out the essential facts and also the gist of the pleadings. The A & P Store at 9751 Manchester Road in St. Louis County was a supermarket where customers had access to all the merchandise and served themselves. In a front corner of the store (from the confusing descriptions we cannot tell which) there was a display rack for soft drinks of various kinds, including Vess 3-V Cola; the rack seems to have consisted of 5 or 6 shelves. Two photographs were received to show the general location, but they were very poorly explained. We gather that this display rack adjoined, or was very close to, an office or "cage" provided for the cashier and manager. On the Monday morning in question Doris Beuttenmuller, plaintiff's mother, went to this store with plaintiff and another daughter who was 4 years old; the mother selected a few items, put them in her cart, and walked to the cashier's cage where she cashed a check and put the money in her handbag. She noticed at this time that there were "quite a few" bottles on the floor along the front of the display and also along the wall of the "cage"; some of these were in cartons and some were loose. She testified that most of the loose ones were along the wall by the manager's cage. After disposing of her money, the mother took plaintiff by the hand, took hold of her cart and moved over to the bottle display where she reached up for a bottle of Vess Cola; at this instant plaintiff pulled away and the mother heard her feet "moving" on the floor; as the mother again reached for the bottle of cola she heard a noise which proved to be the breaking or explosion of a bottle of Vess Cola. The mother described it as an "explosion," the court struck out that statement as a conclusion, and plaintiffs' counsel made an offer of proof to which an objection was sustained. Much further colloquy occurred on this subject during the continued testimony of the mother. The court took the position that the mother admittedly did not *see* any explosion and that some foundation would be necessary. Continuing, the mother testified that she had previously heard bottles *break*, and twice more she referred to this occurrence as an explosion, with persistent objections and motions to strike. The court finally ruled, if we properly understand it, that the term would merely be considered as her designation of what the noise sounded like to her and not as tending to establish the fact that there was an explosion; and hence, that such testimony, per se, would not be sufficient to take the case to the jury. Defendant's motion for a mistrial was denied. The mother further testified, that there was a "loud, terrifying, shattering sound," and that it was "completely different" from the mere breaking of glass; she also described the sound as "unusually loud." Hearing the noise, the mother turned immediately, took two steps and grabbed the child. She testified: that there was "shattered glass" and brown liquid on the floor around plaintiff, scattered over an "area" of 4 or 5 feet; that the glass was mostly in small pieces, though the neck of the bottle was intact; that plaintiff was standing about 18 inches from the "cage" and about 6 inches from bottles on the floor. The child was bleeding from the arm; the manager came out immediately, first aid was administered and plaintiff was taken to a hospital where an operation was performed on her arm later and a cast applied. We need not consider the extent of the injury, but there was evidence of a substantial injury to the elbow (apparently involving a nerve), with a rather slow but generally good recovery. The mother further testified: that no other cus-

tomer had been nearby for several minutes; that she only saw 3 other customers in the store; that she did not see plaintiff pick up any bottle; that plaintiff was behind her when the incident took place; that plaintiff had nothing in her hand when she first turned and saw her. The manager fixed the position of the child (when he first saw her) as considerably further out on the floor, probably several feet from either wall; this was done by marking one of the photographs.

Employees of the A & P mopped up the debris from the floor and threw away all the fragments. Nothing was available as an exhibit or for examination. The assistant manager of the store regularly on duty five days a week, corroborated in large part by the manager, testified: that the Vess delivery truck called every Monday morning; that the driver would check to see what was needed and made all deliveries through the back door; if anything was needed on the display rack he wheeled it to that point and set it out on the floor, apparently in wooden cases; some employee of the store then put the cartons of bottles on the shelves of the display rack; any additional material was put in the basement in wooden cases, being taken there on an electrical chain conveyor which ran beside the steps; in the basement they were taken off by hand and stacked; when needed for the display the material was taken up and handled in the same way; that there was no unusual jerking on the conveyor; that the temperature both in the basement and in the store was regulated automatically and kept at approximately 70 degrees; (one witness thought the basement might be a little cooler); that all the bottled soft drinks were handled by hand and no mechanical equipment was used except the conveyor; that it was not practical to tell how long any individual bottle of cola had been in the store but that an "order" was generally used up in a week or two, possibly three; that it was not possible to say whether there had been an actual delivery on that (Monday) morning; that customers often moved bottles around and frequently left them on the floor; that the store was always swept out before it was closed on Saturday night, and that any bottles then on the floor would have been put on the shelves. The assistant manager had "ordered" soda for the store for eleven years and was, in part, in charge of that business. The manager of the store (from the "cage") heard the noise of the bottle, which he described as "like dropping a bottle on the floor"; he testified, after some refreshing from his deposition, and with some slight equivocation, that the glass was all in small pieces except the neck of the bottle; he corroborated the fact that glass and liquid were spread over an area of 4½ to 5 feet in diameter on the floor around the plaintiff.

Plaintiff offered the answers of Vess to certain interrogatories, the substance of which answers were as follows: that Vess 3-V Cola contained carbonated water, sugar, caramel color and a "combination of about 15 flavoring ingredients"; that the bottles were washed and sterilized and filled with the product automatically; that the syrup (containing the above ingredients) was pumped into a blender mixed with water, pumped into a carbonater, cooled to a temperature of about 35 degrees, and that $CO_2$ gas was then introduced into the mixture; thereafter it was pumped to a filling apparatus where the bottles were automatically filled and capped; that the defendant did bottle the cola at the time in question; that, as aforesaid, $CO_2$ gas was used, which is also described as carbon dioxide; that automatic controls regulated the temperature of the water and the pressure of the gas during the introduction of the gas and that the gas content was also checked manually by the operator of the filling machine.

In their petition the plaintiffs, aside from formal facts, alleged: that plaintiff was injured by a bottle which "popped and exploded" in the A & P Store; that she and her mother were invitees in the store; that plaintiff was standing near some bot-

tles on the floor which were loose and not in containers but were negligently permitted by A & P to be and remain on the floor; that suddenly one of said bottles, being one of Vess 3–V Cola, "popped, exploded and broke" spreading glass and injuring plaintiff in the left arm and left leg; that Vess bottled the product and had exclusive possession and control until it was sold to A & P; that the bottle "was properly and carefully handled" by A & P "except for the fact that it was caused, suffered and permitted" by the defendant A & P to be and remain in the open on the floor in the corner of their said store and "not placed in a carton or container"; that such fact had nothing to do with the explosion itself, which "was not caused or contributed to by the fault, negligence, or improper handling" of said bottle by anyone after leaving Vess; that the bottle contained a carbonated beverage manufactured and bottled by Vess and that it contained carbon dioxide which exercises an exploding pressure; that the explosion would not have occurred if due care had been used by Vess, and that it was an unusual and extraordinary occurrence. As to the A & P, plaintiffs further alleged: that it negligently caused and permitted the bottle (as already stated) to be and remain on the floor, not in a carton or container, and that as a result thereof, when the bottle did "pop or explode," pieces of the glass traveled "from some distance" before striking plaintiff; that if it had been in a carton or container, the glass "would have been stopped" or its flight "greatly diminished by the carton or container"; further, that A & P negligently failed to place the bottle in a carton or container although it had sufficient time to have done so; that it negligently failed to warn plaintiff and others that the bottles were on the floor loose, when it knew or should have known of the danger (as stated above).

Defendant A & P filed its motion to dismiss both counts of the petition upon the ground that they did not state claims upon which relief could be granted. As already stated, that motion was sustained by an order which constituted a final judgment. Defendant Vess answered each count, admitting the formal allegations which applied to it and denying all substantive allegations.

■ As to Vess, plaintiffs pleaded only general negligence, but the sufficiency of the petition was not questioned by defendant's pleadings. We shall first consider the liability of A & P and the propriety of the judgment in its favor. The one point as made by appellants is probably too indefinite to comply with our Rule 83.05(e) but we have determined to consider the sufficiency of the petition. When the petition is analyzed, it is seen that the only causative negligence claimed against A & P is that it failed to put the bottle (or bottles) *into a "carton or container"* although it had sufficient time to do so; in fact plaintiffs alleged that otherwise the bottle was carefully handled by A & P, and that the explosion was not caused or contributed to by any negligence of A & P. So far as the petition is concerned, it would appear that A & P would in nowise have been negligent if it had merely put the offending bottle in a carton, wherever it was, and that defendant was not charged with negligence by reason of the fact that the bottle was *on the floor*. We all know what soft drink cartons essentially are; in fact the Vess cartons are rather vividly shown in Exhibits 1 and 2. They are of paper, and at their highest point cover less than one-half of the height of the bottle. We have concluded that the allegation that plaintiff's injury was caused by the bottle not being in a carton (on the floor or on the shelf), rests upon pure speculation, and that this charge of negligence does not state a claim, either as negligence or as a legal causative element. We therefore affirm the trial court's ruling as to the A & P.

No cases are cited which are directly applicable on this feature of the case. However, in Sweeney v. Blue Anchor Beverage Co., 325 Pa. 216, 189 A. 331,

it appeared that the owner of a small grocery inadvertently knocked over a bottle of ginger ale on a concrete floor and that it then broke or exploded, supposedly cutting the plaintiff. She charged that the bottler was negligent in not enclosing the bottle in a "wire mesh." The court noted that there was no evidence of excessive pressure, but rather the contrary, that the law only exacted of defendant the duty of ordinary care and that the absence of such a covering on the bottle was insufficient to make a submissible case of negligence. Plaintiffs' counsel cite Copher v, Barbee, Mo.App., 361 S.W.2d 137. There a judgment for plaintiff in an exploding bottle case was affirmed as to Safeway (the retailer), and reversed as to the bottler. Plaintiff was looking at a soft drink display, touching nothing, when 2 filled bottles came rolling toward her on the floor; she picked one up and put it on a shelf; she started to pick up the other one and was leaning over it when it exploded, injuring her. A witness who was working on a refrigerator a few feet away, heard a sound like a bottle being dropped, saw a rolling bottle and saw the explosion; it blew glass into his toolbox; he testified that no other person had been around the display for thirty to forty-five minutes, so far as he saw. In considering the liability of the retailer, the court held: that the mere fact of an explosion would not fix its liability; that the evidence of the filled bottles rolling on the floor with further evidence that the assistant manager had passed the display shortly before, and had seen or should have seen its condition, and that no customer had been there for 30 to 45 minutes, created an inference of negligence; that the defendant had superior knowledge or a better source of information than plaintiff as to the cause of the rolling of the bottles; that the bottles were in the exclusive possession of defendant, and that the rolling set in motion a chain of circumstances which resulted in plaintiff's injury. Thus, the court held that the unique and unusual situation of the *rolling bottles* justified a submission on the *res ipsa* theory

against the retailer. That case, we note, was tried to the court, and considerable deference was given to the findings on credibility. In our case there was no rolling bottle, and moreover, the case was not pleaded as to A & P on the res ipsa theory. As indicated, the judgment of dismissal as to A & P is affirmed.

At the outset of our consideration of the liability of defendant Vess we are met with an extended contention of error and much argument concerning interrogatories. The points of alleged error now made in the brief are: (1) in not requiring Vess to state the "exact ingredients" of its cola; (2) in not requiring it to state how much $CO_2$ gas was "supposedly introduced" into the mixture and into "the bottle"; and (3) in not requiring it to state whether $CO_2$ gas had "any explosive properties when compressed in a confined area." It will be necessary to review the transcript briefly, but we shall confine our review to these specific points. On February 12, 1968, plaintiffs filed interrogatories asking, among other matters not now material, the exact contents (later amended to "exact ingredients") of Vess 3–V Cola. An objection to this interrogatory was overruled and Vess answered that it contained "carbonated water, sugar, caramel color and a combination of about fifteen flavoring ingredients." In the same group of answers it also stated that $CO_2$ or carbon dioxide was the gas introduced into the mixture and the bottles, and the process was described in considerable detail. On March 6, 1968, plaintiffs filed additional interrogatories asking, among other things: (1) "how much $CO_2$ gas was supposedly introduced into the mixture; (2) into the bottle; and (5) "whether or not $CO_2$ gas has any explosive properties when compressed in a confined area." On the same day plaintiffs filed a motion to strike Vess's answer stating the ingredients, asserting in effect that the answer was meaningless, and to require a more specific answer; the motion also sought relief as to other answers not involved in plaintiffs' presently

briefed points. Defendant Vess objected to the additional interrogatories (1), (2) and (5); to the first two as repetitions, argumentative and ambiguous, and as an attempt to elicit a trade secret; to No. 5, as calling for an opinion or conclusion and also because the term—"confined area"—had no definite or readily ascertainable meaning. On March 15, 1968, the court made the following order, which is here quoted in full: " 'Defendant's objections to plaintiffs' additional interrogatories No. 1 and No. 2 argued, heard and sustained as to form. Defendant's objection to plaintiffs' additional interrogatory No. 5 argued, heard and sustained.' " There is no order ruling on plaintiffs' motion mentioned above; correspondence placed in the file after the oral argument indicates that plaintiffs' counsel claims that the motion was submitted and in fact ruled. We necessarily follow the transcript.

■ It is obvious that the court sustained objections to the *form* of additional interrogatories 1 and 2 because they asked for the amount of gas "supposedly" introduced into the mixture and the bottle. The term carries a connotation of speculation and it is argumentative. Plaintiffs thereafter made no attempt to correct the form of these interrogatories or to amend them, (as they might have done, State ex rel. Williams v. Vardeman, Mo.App., 422 S.W. 2d 400); instead, they went to trial over five months later in this state of the record. The contention now made claiming error in not requiring further answers was waived. Plaintiffs' motion to compel a more specific answer stating the "ingredients" was also waived by their failure to present their motion and procure an order of record thereon. Additional interrogatory No. 5, inquiring about "explosive properties" of $CO_2$ gas was indefinite and as stated called for a conclusion, State ex rel. Hof v. Cloyd, Mo., 394 S.W.2d 408; it was not susceptible of a specific answer. The ruling thereon by the trial court was correct. All of plaintiffs' allegations of error in rulings on interrogatories are denied. It is wholly unnecessary to review the cases cited by plaintiffs; they are inapplicable in this situation.

Finally, we reach the merits of the court's ruling in directing a verdict for defendant Vess. The question really boils down to two points: (1) was there substantial evidence of an explosion? (2) if so, was there substantial evidence tending to negative independent causes arising after the bottle left Vess's possession? The trial court ruled that the mother's statements that she heard an "explosion" would not be considered as substantial evidence that there *was* an explosion, but merely as a statement that she heard what *sounded* to her like an explosion. This is a rather tenuous distinction. In so ruling the court seems to have relied almost entirely upon the opinion in Abernathy v. Coca-Cola Bottling Co., Mo.App., 370 S.W.2d 175. In that case the court noted that both plaintiff and her daughter testified that a bottle "exploded," and one or both also testified that "it sounded like a shot-gun went off." Neither had touched any bottle and they were merely looking at the display. In considering there the defendant's contention that this testimony was a mere guess and was not substantial evidence for the jury, the court noted that they so testified when neither had even touched a bottle, and "without objection or motion to strike"; it held that the effect and value of the testimony was for the jury. We do not consider this as a direct ruling that the testimony would have been inadmissible if objected to. The trial court apparently did so. In considering the admissibility of the testimony in our case as substantive evidence we must determine whether the term "explosion," explained as it was to some extent by the witness, actually was an inadmissible conclusion. We shall not follow the distinction made by the trial court between its admissibility and its effect.

■ There are few phases of the law of evidence where there has been more controversy than in that regarding the ad-

missibility of opinions of lay witnesses. Wigmore on Evidence, 3rd Ed. Vol. 7, §§ 1917–1929. That author apparently felt that a lay witness should be permitted to give his opinion if based upon facts within his observation, and he considers the later limitations (to the effect that the inferences from the facts must be drawn by the jury) to be entirely illogical. The opinion of a lay witness is inadmissible unless the fact in issue is "open to the senses." Aetna Life Ins. Co. of Hartford, Conn. v. Kelley, C.A.8, 70 F.2d 589, 93 A.L.R. 471. In many Missouri cases lay witnesses have been permitted to testify to matters which were, at least in part, conclusions, as: whether it was "light or dark" on a stairway, Busby v. S. W. Bell Tel. Co., Mo., 287 S.W. 434; that there was a violent jerk of a streetcar or bus or other vehicle, Laycock v. United Rys., 290 Mo. 344, 235 S.W. 91; Fletcher v. K. C. Rys., Mo.App., 221 S.W. 1070; Brown v. Winnwood Amusement Co., 225 Mo. App. 1180, 34 S.W.2d 149; that plaintiff's heel had gone into a hole in the floor, although she did not see the hole, Long v. F. W. Woolworth Co., 232 Mo.App. 417, 109 S.W.2d 85; whether the sound of a bell rung in a streetcar was one or the other of two bells on the car, Kohr v. Met. St. Ry., 117 Mo.App. 302, 92 S.W. 1145; that the breaking of a window on a streetcar "sounded" like a collision, Binsbacher v. St. L. Tran. Co., 108 Mo.App. 1, 82 S.W. 546; that a gas (which burned plaintiff) had been released from sulphuric acid, Wagner Elec. Corp. v. Snowden, C.A.8, 38 F.2d 599; that the occupant of a car would have heard the bell or whistle of a train if such had been sounded, Dickerson v. Term. R. R. Ass'n, Mo., 284 S.W.2d 568; that a soft drink carton was discolored "like it had been wet," Brown v. Kroger Co., Mo.App., 358 S.W.2d 429. And lay witnesses, with little or no real qualification, are often permitted to express their opinions as to speeds, distances, etc., Pedigo v. Roseberry, 340 Mo. 724, 102 S.W.2d 600. It has often been held that where the facts and circumstances are such that they may not readily and accurately be described to a jury, the lay witness may give his opinion or state the ultimate fact as a mental picture or as a "short-hand rendering of the facts." Sullivan v. Union Elec. Light & Power Co., 331 Mo. 1065, 56 S.W.2d 97; Brawley v. Esterly, Mo., 267 S.W.2d 655; Dickerson v. Term. R. R. Ass'n, supra; Griffith v. Continental Cas. Co., 299 Mo. 426, 253 S.W. 1043; Pillsbury Flour Mills Co. v. Miller, C.A.8, 121 F.2d 297. We may regard an explosion from two points of view; one, its occurrence and chemical causation as understood by an expert; but, secondly, as a rather violent and noisy blowing up or bursting apart of something as it appears or sounds to a layman. Plaintiff's mother described the noise she heard as best she apparently could, though not too lucidly; she differentiated the noise from the mere breaking of bottles, a sound which she said she had heard. She had not touched any bottle, and the child's feet were still moving when the noise was heard. The witness's hearing was as much a part of her senses as was her sight. We hold that her statements that the bottle exploded were admissible as substantive evidence.

At this point we note defendant Vess's statements in its brief that plaintiffs "would like this Court to assume that the bottle was on a shelf * * *." There is no evidence to indicate that, and we do not so assume. All the debris was on the floor, the petition alleged that the bottle was loose on the floor and plaintiffs' counsel at the trial stated (during a colloquy) that the bottle was not on the shelf but on the floor. We do not quite understand defendant's argument. Plaintiffs have not argued this "assumption" here.

■ Lastly, was there substantial evidence tending to negative matters of causation occurring after the bottle left Vess's possession? We assume that the trial court did not find it necessary to consider this point, for it ruled that there was no substantial evidence of an explosion. It is necessary, however, that we decide the question. Before discussing it specifically

we note that such suits as this are not strictly res ipsa loquitur, but that the negligence of a bottler may be shown by circumstantial evidence,—i. e., the explosion, plus substantial evidence to indicate that the bottle had not been damaged or negligently handled or subjected to unusual temperature changes after leaving the bottler's hands. Maybach v. Falstaff Brewing Corp., 359 Mo. 446, 222 S.W.2d 87; Abernathy v. Coca-Cola Bottling Co., Mo.App., 370 S.W.2d 175; Ferrell v. Sikeston Coca-Cola Bottling Co., Mo.App., 320 S.W.2d 292. We have reviewed rather fully the evidence showing the handling of Vess Cola delivered to the A & P Store, and we shall not repeat it here.

■ It is rather difficult to find any specific guide from the few Missouri cases which have discussed this subject. In Maybach, supra, the court merely noted that the evidence *tended to show* due care in the manner of keeping and handling the bottles after they left the control of the bottler; there an order granting a new trial was affirmed, but the court declined to rule that a submissible case of negligence had not been made. If it had believed otherwise it would seem that the judgment for defendant would have been reinstated. In Ferrell v. Sikeston Coca-Cola Bottling Co., Mo.App., 320 S.W.2d 292, a bottle exploded while plaintiff, the operator of a beauty shop, was in the process of placing it in a cooler; she had just carried two *bottles from the supply room where the* cases were stacked. Defendant argued that the bottle might have been damaged or mishandled by one of plaintiff's 3 employees, only one of whom testified; the plaintiff testified that the bottles were not "bothered" after delivery to the supply room. That testimony was attacked as being mere speculation. Plaintiff had described her handling of the 2 bottles. The court noted that plaintiff had an opportunity to be familiar with the situation and held that the testimony did constitute substantive evidence tending to prove that the explosion was not due to causes arising

after defendant lost control of the bottle. The court further said that plaintiff "should not be required to eliminate every remote possibility of damage to the bottle after it passes from defendant's possession and control." With that quoted statement we agree; it is perhaps unfortunate, however, that in Maybach and in some subsequent cases (Abernathy, supra, Kees v. Canada Dry Ginger Ale, Inc., Mo.App., 225 S.W.2d 169), the statement is made or repeated in quotations that plaintiff must negative the *possibility* that the bottle had been mishandled, etc., later. There need only be substantial evidence tending to show that it has not been so treated, and Abernathy, supra, actually so holds.

In Abernathy, supra, 370 S.W.2d 175, the same court (Springfield) which decided the Ferrell case held that the evidence was not sufficient to negative subsequent mishandling. A bottle of soda exploded while plaintiff and her grandmother were merely looking at the display which sat on a flat *ledge* about 6½ inches above the floor; on this were cartons and loose bottles, some cartons being stacked 4 and 5 cartons high. No liquid or glass was left on the ledge after the explosion, but there was quite an area on the floor. Different truck drivers "stacked" the soda rack, the employees "occasionally" straightened the display, and customers frequently moved, handled, examined and relocated the bottles, and also shifted bottles from one carton to another, often leaving some loose. The co-owner, the manager, and the latter's wife each testified that, "insofar as he or she knew" there had been no "mishandling" within a "few days" prior to the injury; the court noted the very scant showing of *any real observation by these persons,* and the fact that no employees who had an actual opportunity to observe the soda rack were called as witnesses. It recognized its holding in Ferrell that there need be no absolute certainty in such evidence, but held that the evidence was insufficient, thus upholding the entry of judgment for defendant bottler. It appears to us that the court

primarily determined that there was no evidence from those who had any real opportunity to observe and testify to the conditions.

The above cases illustrate the contrasting views and the very close line of demarcation. We shall not review the facts on other Missouri cases, as: Kees v. Canada Dry Ginger Ale, Inc., Mo.App., 225 S.W.2d 169 (prior appeal, 239 Mo.App. 1080, 199 S.W.2d 76).; Stephens v. Coca-Cola Bottling Co., Mo.App., 232 S.W.2d 181. In Kees, there was an absence of any meaningful testimony concerning the status or handling of the bottle for a substantial period of time. In Stephens, the evidence was not evaluated because the case had been tried and submitted on the res ipsa theory and the judgment was necessarily reversed because of the intervening Maybach decision. The rule of liability of a bottler is stated again in Copher v. Barbee, Mo.App., 361 S.W.2d 137, where a judgment against the bottler was reversed. The evidence by which it was sought to negate any subsequent mishandling was rather scant. In fact the explosion occurred after 2 bottles rolled down toward plaintiff, on the floor, coming from the "pop section." The court held that these facts created an *inference* of negligence on the part of the retailer; that being true, the evidence certainly could not have been held sufficient to negate (or tend to negate) all subsequent mishandling or negligence by others than the bottler. Vess cites and relies strongly on the case of Pepsi-Cola Bottling Co. v. Yeatts, 207 Va. 534, 151 S.E.2d 400. We think that the facts there are distinguishable in that plaintiff's own evidence created an inference of the *fall* of a carton from the display rack, with probable implications of negligence on the part of the store owner or customers. Moreover, the Missouri courts have laid down the controlling principles, and we need not go afield.

■ We have concluded that there was substantial evidence here tending to negate mishandling of the bottle or bottles after leaving Vess. The question of temperature was adequately covered. The methods of moving the wooden crates to and from the basement on the electric conveyor, and of filling of the display rack were reasonably well covered. The manager and assistant manager both testified; they were apparently in as good a position as anyone in the store to state the actual conditions and testify to the handling. The exhibits, although they do not purport to show the exact condition existing at the time of plaintiff's injury, show that an orderly arrangement and apparently good shelving was provided for the display. The cola was delivered regularly and apparently disposed of and replaced with reasonable regularity. We note that it would be impossible in such a case as this to trace the travels and history of an individual bottle. The witnesses very naturally admitted that customers handled the bottles and sometimes left bottles on the floor; the employees replaced them from time to time. It would be virtually impossible to prevent this in any self-service market. The evidence here strongly indicates that the bottle which burst was on the floor; no one knows precisely where it was at the time. Clearly plaintiff's mother had not touched it, and, although defendant argues the fact, it is mere speculation to assume that the plaintiff herself picked it up and dropped it; her mother said that she heard the child's feet moving almost at the instant of the explosion, which tends to show that the child had not stopped to pick something up. We cannot hold, as a matter of law, that the fact of the bottle being on the floor at some location (whether put there by A & P or by a customer) was in itself negligence; nor can we assume that the fact that it was on the floor caused it to explode. Under all the circumstances we hold that the question of causation, including the issue of subsequent negligent handling, was a fact question for the jury, under proper instructions.

The judgment in favor of The Great Atlantic and Pacific Tea Company, Inc.,

is affirmed on both counts. The judgment in favor of Vess Bottling Company of St. Louis is reversed on both counts and the cause as to that defendant is remanded for a new trial.

PER CURIAM.

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

SEILER, P. J., and HOLMAN, J., concur.

STORCKMAN, J., absent.