Shirley Mae WORS, Plaintiff-Respondent-Appellant,

v.

GLASGOW VILLAGE SUPERMARKET, INC., a Corporation, Defendant-Respondent,

and

Royal Crown Bottling Corporation of St. Louis, a Corporation, Defendant-Appellant.

No. 54854.

Supreme Court of Missouri, Division No. 1.

Dec. 14, 1970.

Murphy & Schlapprizzi, Donald L. Schlapprizzi, St. Louis, for plaintiff-respondent.

F. Douglas O'Leary, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondent Glasgow Village Supermarket, Inc.

Richard M. Stout, Thomas M. Richards and John V. LaBarge, Jr. Kirkwood, for appellant Royal Crown Bottling Corporation of St. Louis.

WELBORN, Commissioner.

Action for damages for personal injuries caused by explosion of soda bottle. Directed verdict for retailer in whose store explosion occurred. Jury verdict for plaintiff against bottler for $20,000. Bottler appeals from judgment entered on verdict. Plaintiff appeals from judgment in favor of retailer. (Reference hereinafter to "appellant" is to appellant bottler.)

Plaintiff Shirley Wors was a customer in the Glasgow Village Supermarket on Saturday, July 31, 1965. She intended to purchase some soda. As she approached the beverage supply displayed in the market, a boy wearing an apron and brown jacket brought a four-wheeled cart, loaded with soda, into the area. The boy unloaded the soda and placed it on the shelves, except for one carton of Royal Crown soda, which he put on the floor. After the unloading of the cart had been completed, Mrs. Wors walked toward the front of the store, past the soda display. When she was two or three feet past the carton which had been placed on the floor, she heard a "big pop" and looked down and saw that her foot had been cut. The neck of a broken bottle with a Royal Crown cap on it was lying on the floor.

Mrs. Wors' action against the bottler was premised on the general negligence theory approved in Maybach v. Falstaff Brewing Corporation, 359 Mo. 446, 222 S.W.2d 87. Neither the bottler nor the retailer offered evidence at the trial. Two employees of the supermarket and the driver of the Royal Crown delivery truck were called as witnesses by plaintiff.

On this appeal, the appellant bottler contends that plaintiff's evidence was insufficient to supply one of the essential elements of liability in a case such as this, i. e., proof that the bottle had not been damaged or negligently handled after leaving the bottler's hands. Maybach v. Falstaff Brewing Corporation, supra, 222 S.W. 2d 91. No question is raised as to the evidence of an "explosion". Likewise, there is no contention that plaintiff failed to show that the bottle had not been subjected to unusual temperature changes after it left the bottler's hands. See Beuttenmuller v. Vess Bottling Company, Mo.Sup., 447 S.W.2d 519, 526–527 [7]. Plaintiff's testimony identified the exploding bottle as one which had just been placed on the floor by a man engaged in replenishing the display stock, and there is no contention that customers might have mishandled the exploding bottle. See Abernathy v. Coca-Cola Bottling Company of Jackson, Mo.App., 370 S.W.2d 175, 178.

Viewing the evidence in the light most favorable to plaintiff, it shows that the bottle which exploded had been delivered to the store by a Royal Crown driver, as part of a delivery of 27 cases of Royal Crown Cola, at around 4:00 P.M., Thursday, July 29. The driver placed some of the soda which he delivered on the shelf inside the store. The exploding bottle was part of the remainder of the delivery which the driver, in accordance with regular procedure, placed in a storage room, stacked back against the wall. The bottle was not removed from its delivery site until an employee of the store placed it on a cart, in the wooden case in which it was delivered. The soda was stacked on the cart four cases high. The cart, which had solid rubber tires, was then pushed some sixty feet over a smooth asphalt floor to the soda display area. There the store employee removed cardboard cartons containing six bottles from the wooden cases and placed the soda on the shelves in the cardboard cartons. As mentioned above, Mrs. Wors observed the delivery of the soda to the display area immediately before the bottle exploded.

Charles Oldani, an assistant manager of the supermarket in July, 1965, testified to

the procedure for purchasing and handling soda at that time. He could recall nothing unusual which occurred with regard to the Royal Crown Cola which had been delivered on July 29 or the earlier delivery of July 26. Oldani went to Mrs. Wors' assistance after she had been cut by the flying glass on July 31. He saw bleeding on Mrs. Wors' leg. He also noticed the neck of a broken bottle lying on the floor.

According to Oldani, the soda stock on the shelves would have been replaced on July 31 by Ralph Signaigo, an employee of the supermarket. Signaigo was called as a witness by plaintiff. He testified that he was working at the supermarket on July 31 and that one of his jobs was stocking the shelves. Three other persons also did such work. He testified to the manner in which he restocked the soda supply. He recalled instances in which bottles had broken in the store for various reasons. He testified that he had no recollection of having placed a Royal Crown carton on the floor in front of the shelf area on July 31, 1965. He also testified that he did not recall having dropped a carton of Royal Crown on that date. He said that he felt he would recall it if he had done so because "it happens very seldom." He testified that he could recall no mishandling of the shipment of Royal Crown at the store on July 29, 30 or 31, 1965. He stated that he believed that he would recall if he had a problem with the soda at the time of plaintiff's injury "because it's so rare." Although Oldani testified that he directed Signaigo to clean up the floor after Mrs. Wors was injured, Signaigo stated that he could not recall having done so.

The appellant levels numerous charges at plaintiff's evidence. Appellant points out that Oldani had given Signaigo no orders respecting the soda on July 31, because he came to work at noon, only a few minutes before the casualty. Appellant attacks Oldani's knowledge of the matter concerning which he testified on the grounds that Oldani had nothing to do with the July 29th delivery by Royal Crown and

because Oldani thought Royal Crown was delivered on Monday and Friday, whereas it was clearly shown that Thursday, not Friday, was in fact the delivery day. Appellant says that the only thing that Oldani purported to relate about the handling of the soda actually involved was that it was stocked by Signaigo and that this had occurred while Oldani was not present.

Appellant attacks the value of Signaigo's testimony. The identification of Signaigo as the person Mrs. Wors saw stocking the soda is questioned. Mrs. Wors stated that the person she saw wore an apron and a brown jacket. Signaigo testified that he wore a jacket only in the winter. Appellant says that Signaigo's testimony displays a complete absence of actual knowledge of occurrences on the day in question, as revealed by his failure to recollect the occurrence causing the injury and his lack of independent recollection of having worked on July 31, 1965.

■ The obligation of plaintiff was to produce substantial evidence tending to show that the bottle had not been mishandled subsequent to its delivery to the supermarket. Beuttenmuller v. Vess Bottling Co., supra, 447 S.W.2d 527 [8]. Beuttenmuller recognizes that in a case such as this, where the person injured has had no contact with the exploding bottle until that occurrence, the testimony regarding handling by the seller is necessarily somewhat general in nature. As noted in Beuttenmuller, " * * * it would be impossible * * * to trace the travels and history of an individual bottle." 447 S.W.2d 528 [9]. One authority states the applicable rule: "The plaintiff is not required to do the impossible by accounting for every moment of the bottle's existence since it left the defendant's plant; and it is enough if he produces sufficient evidence of careful handling in general, and of the absence of unusual incidents, to permit reasonable men to conclude that, more likely than not, the event was due to the defendant's negligence." Prosser on Torts (3rd ed.) § 39, p. 223.

The evidence here meets the Beuttenmuller test. It adequately showed a procedure for careful handling of the soda after its delivery. Appellant urges that the evidence showed that other delivery persons had access to the storage room. However, the testimony that the soda was stored back against the wall would negative the possibility of their mishandling it. Furthermore, the bottle here was in storage only a comparatively brief time. The evidence showed that it was conveyed from the storage area to the shelves in such a way that the bottle would not likely be disturbed.

Appellant suggests that plaintiff's testimony on cross-examination shows that the bottles made a "jingling noise" when they were placed on the shelf. She did say that there "could have been" such a noise, as undoubtedly there could, but that she did not remember whether she heard such a noise.

The assistant manager who testified was familiar with the handling of soda at the store. The stock clerk was unable to recall events of the day of the occurrence, but, again, he was familiar with the general procedures. The jury could have found from this testimony that the bottles were dealt with in a generally safe manner. The negative evidence of the absence of unusual incidents is supplied by these witnesses. At least nothing had occurred which impressed them. Oldani was, of course, familiar with the occurrence of the explosion and for that reason would have been in a position to recall any unusual occurrence connected with soda handling at the time. Signaigo said that an unusual occurrence, such as dropping a bottle, was so unusual that he would have remembered had he done so. All in all, the evidence here offered was sufficient to present for the jury the question of mishandling of the bottle at the supermarket. The trial court did not err in overruling Royal Crown's motion for a directed verdict on that basis.

Appellant assigns three rulings of the trial court on evidentiary matters as evidence. The first is in overruling appellant's objections to questions asked of the driver of the delivery truck about other exploding bottles. These questions produced the response that the driver in his eighteen years' experience with Royal Crown had observed bottles of soda explode for no apparent reason. Appellant relies upon the rule which forbids evidence of similar injuries, without proof of the cause, as evidence of the cause of a specific occurrence. 65A C.J.S. Negligence § 234(5), pp. 651–652.

Counsel for both plaintiff and the supermarket made such inquiries of the driver. The trial court, after first sustaining Royal Crown's objection, overruled it on the theory that the supermarket had the right to produce such evidence in order to negative the possibility of its negligence as the cause of the explosion.

The testimony did have probative value on that issue and was, therefore, admissible. The fact that it might not have been admissible to show negligence of the bottler does not render it inadmissible on another issue to which it was relevant. Scott v. Missouri Ins. Co., 361 Mo. 51, 233 S.W.2d 660, 665 [9]. As the court there pointed out, the bottler would have been entitled to an instruction limiting the extent and purpose of the jury's consideration of such evidence. Since no such instruction was requested, however, the court was not obliged to give one. Dyer v. Globe-Democrat Publishing Co., Mo.Sup., 378 S.W.2d 570, 581 [7].

Appellant next contends that the trial court erred in permitting Signaigo to testify that he did not recall any mishandling of Royal Crown on July 29, 30 or 31, because the witness had testified that he had no recollection of having worked on July 31 and because it was not shown that he did work on July 29 and 30.

Signaigo testified that he did not recall the incident which caused plaintiff's injury. When asked if he was working on July 31, he replied: "Well, I have checked and they said I was." When the witness was asked whether he recalled any mishandling of the Royal Crown shipment on July 29, 30 or 31, objection was made on the ground that the witness had previously testified that he had no recollection about that time. There was no objection on the basis of lack of evidence that Signaigo worked on July 29 and 30. Therefore, that specific objection is not properly before us. Insofar as the inquiry related to the 31st, we do not consider that the witness's prior testimony demonstrated such lack of knowledge as disqualified him from answering the question. He did not recall the injury to Mrs. Wors. Some refreshment of his recollection was involved insofar as his having worked that date was concerned. He apparently satisfied himself that he had and at no time did he disclaim any recollection of all events of the day in question. He was enabled to supply the negative evidence which his answer provided on the basis of the rarity of occurrences involving soda. His testimony was not so lacking in probative value that it should have been excluded.

Appellant's objection is not controlled by Kees v. Canada Dry Ginger Ale, Inc., 239 Mo.App. 1080, 199 S.W.2d 76. That was an exploding bottle case in which the court held that the proprietor of a self-service store was improperly allowed to testify that a bottle delivered to his store on January 28 was not tampered with before it left his store on March 1. The objectionable testimony was that none of the six employees of the store had tampered with the bottle during that time. The court held that such testimony was merely a speculation and guess, obviously on the theory that the witness could not have known what others might have done. Here, the witness was asked only as to his own knowledge of mishandling and replied merely that he knew of none.

Appellant's next points relate to evidence pertaining to plaintiff's testimony as to medical and household expenses she sustained as a result of her injury. Appellant contends that, inasmuch as plaintiff's testimony indicated that she was married, she should not have been permitted to testify as to medical and household expenses unless she also showed that she was unmarried at the time that they were incurred. Appellant makes the further and related point that the trial court erred in denying its instruction withdrawing plaintiff's claim for medical and household expenses from the jury because her testimony showed that she was married, her husband had withdrawn from the case and the only evidence before it precluded jury consideration of these items of damage.

The petition in this case originally included a claim by plaintiff's husband for his wife's medical and household expenses and for loss of consortium. Before the trial began, discussion arose in chambers about plaintiff's marital status. Plaintiff's counsel stated that plaintiff and Richard Wors had been married and divorced before the accident and had subsequently remarried. Some discussion ensued about evidence of these facts and about the right of the husband to bring his claim in such circumstances. As a result of the discussion, the claim of the husband was dismissed and plaintiff was permitted to amend her petition to allege that she had incurred medical expenses of $1,000 and household expenses of $100.

At the trial, plaintiff testified that after her injury she waited for her husband to arrive. The husband testified that his daughter had called and explained "my wife had an accident" and that he went to the store and saw his wife. Appellant's counsel objected to testimony about plaintiff's paying her mother $105 for household services during her recovery from the injury and to testimony about physician's bills of $40 and $408, all on the grounds that those issues were not properly in the

case. Appellant also sought the withdrawal instruction which was refused.

The basic import of appellant's objection here is that, inasmuch as plaintiff's testimony referred to her husband's assisting her at the time of her injury and the husband so testified, the only evidence of record as to plaintiff's marital status was that she was married. Therefore, insofar as the record showed, the claim for household services and medical expenses belonged to the husband. Appellant also argues that plaintiff was permitted to appear before the jury as a married person and thereby got her case to the jury "under false colors."

■ On the withdrawal instruction, had plaintiff been married at the time of the injury, the general rule as to her medical and household expenses would have made the obligation that of the husband recoverable by him in his separate right of action. Take v. Orth, Mo.App., 395 S.W. 2d 270, 276 [10]. "Nevertheless, under certain circumstances the injured wife is entitled to sue for and recover the medical expenditures. She may do so when she has contracted or incurred liability for her medical treatment, or when she has paid for the medical services rendered. Irwin v. McDougal et al., 217 Mo.App. 645, 274 S.W. 923; McLean v. Kansas City, 81 Mo.App. 72; Ashby v. Elsberry & N. H. Gravel Road Co., 111 Mo.App. 79, 85 S.W. 957; Tinkle v. St. Louis & S. F. Ry. Co., 212 Mo. 445, 110 S.W. 1086. And, as stated by this court in McLean v. Kansas City, supra, (cited by defendant) 'the wife may recover for medicines and medical attention where the charge therefor is made against her. In such case these elements of damages are taken away from the husband and given to the wife'". Rearick v. Manzella, Mo. App., 355 S.W.2d 134, 137 [2–4]. Therefore, even if the evidence of record indicated plaintiff's marriage at the time, that fact alone would not have precluded her recovery of her medical and household expenses. Plaintiff did testify that she paid her mother $105 and spent $50 for medical expenses. Under the exceptions to the general rule, even had she been married, plaintiff could have recovered for these items. She did not testify that she paid the doctor and hospital bills. If defendant wished to withdraw from the jury's consideration items for which the record provided no basis for plaintiff's recovery, a correct withdrawal instruction should have been submitted. One which included expenses for household help was, under no theory, proper. Therefore, the trial court did not err in refusing the instruction offered and was under no duty either to modify the tendered instruction or to give a correct one of its own motion. Statler v. St. Louis Arena Corporation, Mo.Sup., 388 S.W.2d 833, 837–838 [3].

■ Appellant's next contention is directed at that portion of plaintiff's verdict-directing instruction which told the jury that it must find for plaintiff if it believed that, among other things, "the said bottle of Royal Crown soda was not damaged or mishandled after delivery to Glasgow Village Supermarket." Appellant complains that the use of the word "mishandled" was erroneous because "it infers an intentional or willful act, differing from ordinary negligence." The appellant argues that "misconduct" indicates willful and intentional action and that affixing the prefix "mis-" before the word "handling" results in a similar meaning for the word "mishandle."

The prefix "mis-" does not necessarily involve intentional and willful action. The frequent use by the courts of this state of the word "mishandle" in cases such as this is as good evidence as any that the word is generally understood as synonymous with negligent handling. See Beuttenmuller v. Vess Bottling Co., supra, 447 S.W.2d 528 [9] ("We have concluded that there was substantial evidence here tending to negate mishandling of the bottle or bottles after leaving Vess."); Copher v. Barbee, Mo. App., 361 S.W.2d 137, 144; Ferrell v. Sikeston Coca-Cola Bottling Co., Mo.App., 320 S.W.2d 292, 295. This assignment of error is without merit.

Appellant's next assignment of error is based upon the court's refusal to permit the reading to the jury of allegations from plaintiff's first and second amended petitions in which plaintiff charged that the negligence of Glasgow Village Supermarket caused or contributed to the explosion of the bottle. Royal Crown offered those portions of abandoned pleadings on the theory that they refuted plaintiff's claim that no cause intervened after Royal Crown parted with the bottle.

■ There is no necessity for setting out in full the offered portion of the earlier petitions. The allegations were in general terms, for example: "[T]he explosion was a direct and proximate result of the negligence of the defendants in the manufacture, distribution and handling of the soda; * * *." The allegations are of legal conclusions, not facts. As such, they did not amount to admissions within the rule which appellant would apply. Giannone v. United States Steel Corporation, 3rd Cir., 238 F.2d 544, 548.

■ The complaint that the verdict is excessive is without merit. Plaintiff, 34 years of age at the time of trial, sustained a cut in the area of her left heel. She was taken to the office of an osteopathic physician at the shopping center where the injury was sustained. That physician explored the wound and closed it with six stitches. According to him, plaintiff had a low threshold of pain and he gave her pain pills. She returned to that doctor five more times, the last time on September 1, 1965. At that time her ankle was swollen and she walked with a limp.

On October 5, 1965, she was examined by an orthopedic surgeon. He noted a generalized swelling of the lower half of the left leg. He also noted weakness of the active plantar flexion of the left ankle which he attributed to a defect in the Achilles tendon. In January, 1966, the orthopedist concluded that there had been a laceration of the Achilles tendon. On October 4, 1966, surgical repair of the tendon was performed

at Missouri Baptist Hospital. The ends of the tendon were connected by a wire. Plaintiff was placed in a long leg plaster cast from her groin to her toes. She was discharged from the hopsital on October 9, 1966, on crutches. The cast was removed on November 8. The operation left an S. shaped scar on the back of plaintiff's leg. At the time of trial, the principal muscle of the lower left leg had "bunched up," and plaintiff walked with a slight limp.

Appellant has cited no case fairly comparable with this case. Statler v. St. Louis Arena Corporation, Mo., 388 S.W.2d 833, relied upon by appellant, involved a remittitur by this Court of $6,500 from a $22,500 verdict for damages for an ankle fracture. The resulting $16,000 after remittitur, in 1965, is approximately the equivalent of a $20,000 recovery today, based upon the steady erosion of the purchasing power of the dollar. Here, plaintiff's injury produced pain over a prolonged period of time, occasioned by the fact that the rupture of the Achilles tendon was the gradual result of the sawing action of particles of glass which remained in the wound. Surgical repair of the rupture was required. Plaintiff now has a scar on her lower left leg and the musculature of that limb differs from that of her right leg. Considering the age of plaintiff and the nature and extent of her injuries, we conclude that appellant has not demonstrated that the verdict is excessive.

■ Appellant's final complaint is that plaintiff's third amended petition failed to state a cause of action because both Count I and Count II alleged that plaintiff was injured as the result of general negligence of separate defendants. Appellant contends that such pleading made it impossible to determine that either defendant was negligent and therefore its motion to dismiss for failure to state a claim should have been sustained.

Count I charged general negligence against Royal Crown. Alternatively, Count II charged general negligence against Glas-

gow Village Supermarket. The alternate statement of these claims was authorized by Supreme Court Rule 55.12, V.A.M.R. The case of DeVault v. Truman, 354 Mo. 1193, 194 S.W.2d 29, relied upon by appellant, did not involve alternative pleading. It is not in point.

Plaintiff-appellant's counsel, on oral argument in this Court, stated that she was in effect abandoning her appeal. We do not, therefore, consider her contentions.

Judgment affirmed.

HOUSER, C., not sitting.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur and SHANGLER, Special Judge, concurs.