**Mary PATTERSON,**
**Plaintiff-Respondent,**

v.

**FOSTER FORBES GLASS CO., a**
**corporation, Defendant-Appellant.**

**No. 47474.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 19, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 8, 1984.

Application to Transfer Denied
Sept. 11, 1984.

Gilbert D. Connor, St. Louis, for defendant-appellant.

Donald L. Schlapprizzi, St. Louis, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from a jury verdict and judgment against it for $50,000 in a products liability case. The cause of action was based upon the explosion of an empty baby bottle manufactured by defendant and purchased by plaintif from a retailer 12 months before the accident. Plaintiff sought relief pursuant to Sec. 402 A Restatement of Torts Second adopted as the law of this state in *Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362 (Mo. banc 1969).

Plaintiff testified that in July 1978 she purchased eight "Even Flo" 8 ounce glass baby bottles from Dolgins in anticipation of the birth of her first child in August. They had cardboard packaging around them. Following that birth she regularly used all eight bottles for the child's formula and for juices and other liquids. Her testimony reflects that each bottle was utilized as frequently as once a day for the eleven month period prior to the accident. In July 1979, she gave her child the bottle containing a grape drink which the child consumed. She then placed the bottle on a kitchen table. When the child wanted additional grape drink she picked the bottle up from the table and it exploded. A small portion of the upper portion of the bottle including the nipple and a section of the bottom were identifiable; the remainder of the bottle was reduced to slivers and spicules of glass scattered throughout the kitchen. Many spicules were embedded in an oil cloth tablecloth which was introduced in evidence and still contained some spicules. The explosion caused a cut on the palm of plaintiff's hand which included severance of two tendons and the nicking of a third.

Plaintiff's mother-in-law swept up most of the debris and threw it away. Additional cleaning the next several days disposed of the remainder of the glass. The day after the accident, plaintiff's husband threw away the remaining "Even Flo" bottles out of fear of a recurrence and potential injury to the child.

Plaintiff's evidence included a lengthy recitation of the use and care of the bottles after purchase by her. That evidence reflects that the bottles were never dropped, were washed solely by hand, were given to the baby only while the child was being held or in her crib, that the baby never dropped the bottles on the floor and the slats of the crib were too narrow for the bottle to fall through, and that the bottles were transported to the baby sitter's (her mother-in-law) in an insulated bag. They were not dropped at the mother-in-law's. The evidence was sufficient to establish that the bottle in question was never mis-

handled after its purchase by plaintiff. There was no evidence of its treatment prior to purchase.

Plaintiff also testified that in addition to the "Even Flo" designation the bottles contained a logo on the bottom consisting of F's in a circle. Defendant stated in interrogatory answers that it manufactured 8 oz. bottles for the Even Flo company in June 1979 and that it utilized as its logo on the bottom of the bottles "Script F's inside a circle." These answers were read to the jury. No expert testimony was presented by plaintiff and defendant presented no evidence.

Defendant raised two points on appeal i.e.: plaintiff failed to make a submissible case and the verdict was excessive. In regard to the first point defendant contends the evidence fails to establish (1) that it manufactured the bottle, (2) that the bottle was defective, and (3) that it was not mishandled after leaving defendant's control.

Sec. 402A Restatement of Torts 2nd provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

█ The evidence was clearly sufficient to establish defendant as the manufacturer of the bottle which exploded. It admitted having made 8 ounce bottles for Even-Flo up to a month before plaintiff purchased the bottles and admitted that its logo on the bottles was the same as that identified by plaintiff on the bottles she bought.

Defendant strongly argues that no defect was proven. We are cited to no cases in this state which have dealt with exploding bottles under the strict liability in tort doctrine of the Restatement. There is, however, a substantial body of law concerning such bottles in the negligence field. Missouri courts have rejected the doctrine of *res ipsa loquitur* in such cases because the requirement of control by the defendant is not present. *Mayback v. Falstaff Brewing Corporation*, 359 Mo. 446, 222 S.W.2d 87 (1949). But the courts have recognized that liability can be found circumstantially and that the explosion of a bottle is a strong circumstance inferring negligence. *Mayback v. Falstaff Brewing Corporation, supra; Beuttenmuller v. Vess Bottling Company of St. Louis*, 447 S.W.2d 519 (Mo.1969) [7]; *Ferrell v. Sikeston Coca-Cola Bottling Co.*, 320 S.W.2d 292 (Mo.App.1959); *Abernathy v. Coca-Cola Bottling Company of Jackson*, 370 S.W.2d 175 (Mo.App.1963). This inference arises because courts have recognized that under normal circumstances a properly manufactured bottle which has been properly filled does not explode. *See Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565 (Mo.App.1977) [8] where a similar inference arose from the spontaneous combustion of a television set. The exploding bottle cases are distinguishable from the case at bar in two important particulars. First, they involve bottles filled with a carbonated beverage whereas the bottle here involved was empty. Secondly, they involve explosions occurring before usage of the product at a very early stage of the consumer's contact with the bottle. Here the bottle was in the possession of the plaintiff for a year and in active use for eleven months. These two distinguishing features strengthen the inference that the explosion was the result of a defect in the product. The first because it eliminates any prospect that the explo-

sion resulted from the contents of the bottle or the method used in filling it. The second will be discussed more fully later. If the explosion is a strong circumstance in a negligence case it is an even stronger circumstance in a products liability case which rests solely upon the presence of a defect whether that defect is negligently created or not. In both cases a dangerous defective condition is required; in negligence that condition must additionally be the product of human error. If the explosion infers both elements in a negligence action, it certainly infers the single element in a products liability action.

■ The exploding bottle negligence cases, however, require additionally some evidence "tending to show that, after the bottle ... had passed from the bottler's possession and control, (a) it had not been damaged or handled negligently and (b) it had not been subjected to unusual temperature change." *Abernathy v. Coca-Cola Bottling Company of Jackson, supra.*

Whether such evidence has been provided is, in the final analysis, decided on the facts of each case. Such evidence need not have the quality of absolute certainty and a "plaintiff, to make a submissible case in a suit of this character, should not be required to eliminate every remote possibility of damage to the bottle after it passes from defendant's possession and control." *Ferrell v. Sikeston Coca-Cola Bottling Co., supra,* [8, 9]; *Beuttenmuller v. Vess Bottling Company of St. Louis, supra,* [8].

This requirement negating subsequent mishandling has its counterpart in Sec. 402A. That section provides for liability if the product is expected and does reach the consumer without substantial change in condition. Comment g to that section places upon the plaintiff the burden of proof of that element. It should be noted that that comment also provides that "safe condition at the time of delivery by the seller will, however, include proper packaging ...." We have previously recognized the plaintiff's burden to establish that the defect causing the injury existed at the

time the product left the possession and control of the defendant. *Brissette v. Milner Chevrolet Company,* 479 S.W.2d 176 (Mo.App.1972) [4–6]; *Weatherford v. H.K. Porter, Inc.,* 560 S.W.2d 31 (Mo.App.1977) [2, 3]; *Winters v. Sears, Roebuck and Co., supra,* [3, 4]. In the last cited case we stated however:

"The doctrine of strict liability does not require impossible standards of proof. The proof 'must be realistically tailored to the circumstances which caused the form of action to be created'
....

"The existence of a defect may be inferred from circumstantial evidence with or without the aid of expert opinion evidence." [3, 4, 5].

■ In determining whether a submissible case is made we examine the inferences to be drawn from the circumstantial evidence and determine whether those inferences are reasonably probable without resorting to guesswork or speculation. *Shepard v. Ford Motor Company,* 457 S.W.2d 255 (Mo.App.1970) [4]; *School Dist. etc. v. Transamerica Ins. Co.,* 633 S.W.2d 238 (Mo.1982) [4, 5]. If they are, the evidence is sufficient.

■ The evidence is more than adequate to support a finding that no mishandling occurred after plaintiff's purchase of the bottle. There is no direct evidence of the handling of the bottle after manufacture by defendant and prior to purchase by plaintiff. We are dealing here with products liability which requires only a defect, not negligence. Unlike the exploding bottle negligence cases, there is no requirement that the explosion was the product of negligence. The mishandling requirement in the negligence cases is based, at least in part, upon the supposition that negligence caused the explosion and the absence of interim mishandling must be established to determine that the source of that negligence is the defendant rather than someone else. The law does not presume negligence and inasmuch as negligence is immaterial to this case it is not necessary to locate it or its source. The evidence in this

case therefore, does not need to eliminate negligence of others, it need only establish inferentially that the defect existed when the product left the control of defendant.

We further must recognize the near impossibility in the factual posture of this case of providing direct evidence to refute mishandling by the retailer, wholesaler and others in the chain of distribution. The product involved is essentially fungible. An identical bottle purchased after the accident by plaintiff and introduced as an exhibit reveals that other than the logo and brand name the bottles carry no individual identifying markings such as serial numbers. The product is sold in large quantities at a relatively inexpensive price. The injury here occurred a year after purchase from a major retailer of a product individually non-identifiable sold in large quantities. Impossibility of proof does not, of course, eliminate the necessity for plaintiff to carry her burden but it does affect the quality and quantity of proof necessary to carry that burden, particularly under products liability concepts and purposes. *Winters v. Sears, Roebuck and Co., supra*, [3, 4].

We can eliminate from this case the requirement that plaintiff negate the exposure of the product to extremes of temperature. Baby bottles, by their very nature, are intended to be exposed to a wide range of temperatures from the heat of sterilization to the cold of refrigeration. We are left then with physical damage to the bottle. That we find was sufficiently negated by the period of use of the product and the nature of the accident. The bottle did not break nor crack. It exploded with great force. It is reasonable to conclude that had the bottle been physically damaged prior to plaintiff's purchase, the results of that damage would either have been immediately apparent, as with a crack, or would have shown up shortly after purchase through leakage or breakage. That neither occurred and that the accident involved an explosion of an empty bottle at room temperature after eleven months of careful use creates a reasonable inference that the defect was in the physical composition of the bottle rather than originating from an outside source.

Defendant also contends that without either the bottle available for examination or expert testimony plaintiff fails to make a submissible case. This conclusion is distilled from an analysis of cases in which one or the other was present. But as stated in the heretofore cited quotation from *Winters v. Sears, Roebuck and Co., supra,* the existence of a defect may be inferred from circumstantial evidence with or without expert testimony. The circumstances here are sufficient without the bottle (which could not have been produced because of the explosion) or expert testimony to justify the jury finding of liability.

Defendant also contends the verdict was excessive. We believe it to have been generous but do not find it sufficiently generous to shock our conscience or to declare it excessive. Plaintiff was 27 years old. She had basically a good recovery following surgery to reconnect the severed tendons and two months of physical therapy. She does have some residual permanent damage and scarring. At the time of trial she had daily pain, stiffness and weakness in her hand. She did not have complete use of two fingers on her right hand. She had reached as full a recovery as she will achieve by trial time. Her employment prior to her first baby and between babies involved use of her hands to operate office equipment similar to a typewriter. Since the accident she is unable to utilize a typewriter because of weakness and loss of dexterity in the afflicted fingers. While not employed at the time of trial, the evidence does establish that her ability to work has been impaired. Her medical bills were approximately $2500.

Judgment affirmed.

GAERTNER, P.J., concurs with separate opinion.

STEPHAN, J., concurs.

GAERTNER, Presiding Judge, concurring.

I concur in the result reached by the majority opinion, but write separately in order to emphasize the narrow scope of the decision and to point out my disagreement with certain of the conclusions drawn by the majority.

In the vast majority of strict liability cases under § 402A, Restatement of Torts Second, expert opinion testimony is necessary to establish the existence of a manufacturing or design defect. Some cases, however, where the defect is glaringly obvious, such as the failure to install a material component of a product, permit jurors without technical expertise to easily appreciate the danger to the user of such a product. Another exception to the general rule is where the nature of the occurrence itself, viewed in the light of common knowledge and widely known irrefutable scientific principles, points unerringly to but a single conclusion; it could only have occurred because of a manufacturing defect. This is such a case. Therefore, while I am not disposed to hold that a reasonably probable inference an injury resulted from a manufacturing defect suffices to make a submissible case under § 402A where other explanations are possible, I see no other explanation here.

The incident, as recounted by plaintiff's evidence is extraordinary, to say the least. However, this evidence is unrefuted, indeed, unchallenged. It was accepted as true by the jury. We, therefore, accord it similar treatment. The tremendous force of the explosion is not only described by oral testimony, but is vividly established by examination of the tablecloth introduced as an exhibit at trial and filed with this court. Even after being wiped off by plaintiff's mother-in-law, subjected to the inevitable handling and examinations involved in pre-trial and trial procedures, numerous fragments of glass remain embedded in the oilcloth surface. They are so small most can be detected only by feel, not sight. None of those remaining are larger than a grain of salt. The bottle did not just shatter, it virtually disintegrated, thus bespeaking tremendous pressure. The bottle contained only the dregs of the child's grape drink. It was capped by a rubber nipple. Pressure from within the bottle's cavity would have escaped through the weakest point, the nipple. There is no evidence of external pressure which would have caused a collapsing type of implosion rather than an explosion scattering glass shards in all directions throughout the kitchen. It does not take scientific expertise to conclude that the only logical explanation for such an occurrence is a defect within the glass forming the walls of the bottle which, subjected to the anticipated temperature variations over a period of months, built up ever increasing pressure until, like an unexploded bomb, the slight disturbance of picking it up caused the bottle to explode. Ergo, plaintiff's evidence established a condition which could only have been created during the manufacturing process.

Further, I am not persuaded that the dearth of evidence concerning the handling of the bottle by wholesalers and retailers is overcome simply by the eleven month period of use by plaintiff or by the difficulty of obtaining evidence relating to this subject. An essential element of plaintiff's case is proof that the defect existed when the product left the hands of the manufacturer. I find this proof in the nature of the occurrence, explainable only by a defect within the glass and excluding an explanation resulting from mishandling.

It has long been settled in Missouri that circumstantial evidence combined with expert opinion testimony that a manufacturing defect was "the more reasonable probable cause" of an incident was sufficient to make a submissible case under § 402A, even in the absence of evidence of causation which reached the degree of reasonable certainty. *Winters v. Sears Roebuck & Co.*, 554 S.W.2d 565, 570 (Mo.App.1977). I do not believe that circumstantial evidence standing alone is sufficient to overcome an absence of proof of the twofold requirement that a product contained a manufacturing defect dangerous to users

when it left the hands of the manufacturer and that it reached the consumer in an unchanged condition unless, as is the case here, the nature of the occurrence itself is such as to exclude other possibilities.