Judy Lea **WHITE;** Sheila Denise White and Tammy Rene White, by and through their next friend, Judy Lea White, Plaintiffs–Appellants,

v.

**THOMSEN CONCRETE PUMP COMPANY,** a California corporation; **Royal Industries, Inc.,** a California corporation; and **Vernon L. Goedecke, Inc.,** a Missouri corporation, Defendants–Respondents.

No. 15033.

Missouri Court of Appeals, Southern District, Division One.

Feb. 24, 1988.

Motion for Rehearing or to Transfer to Supreme Court Denied March 21, 1988.

David A. Yarger, Kevin Schehr, Woolsey & Yarger, Versailles, for plaintiffs-appellants.

Robert L. Bruer, Springfield, for Thomsen & Royal.

John S. Sandberg, Ian P. Cooper, Shepherd, Sandberg & Phoenix, P.C., St. Louis, for Goedecke.

GREENE, Presiding Judge.

This is a strict liability product defect case.

Plaintiffs, Judy Lea White, in person and as next friend of her two minor daughters, Sheila Denise White and Tammy Rene White, appeal from a trial court judgment affirming a jury verdict in favor of defendants Thomsen Concrete Pump Company (Thomsen), Royal Industries, Inc. (Royal), and Vernon L. Goedecke, Inc. (Goedecke). In their appeal, plaintiffs claim the trial court erred by (1) permitting the introduction of inadmissible evidence on the issue of contributory negligence, which is not permissible in a product defect case, (2) permitting the introduction of evidence that violated the collateral source rule, and (3) giving contributory fault instructions that were not supported by the evidence.

Our review convinces us there is no merit to the first two points relied on by plaintiffs in their appeal. That review also convinces us that the giving of the contributory fault instructions in issue was erroneous, but that such error was harmless, as plaintiffs did not make a submissible case. We affirm.

A brief statement of the relevant facts is as follows. Terry Michael White, the husband of Judy and father of Sheila and Tammy, was an employee of the Dam Red–E–Mix Company. His job was to operate a machine called a concrete pump, which Dam Red–E–Mix had purchased from Goedecke. Goedecke had purchased the pump from Thomsen. Thomsen is a subsidiary of Royal. Goedecke, in addition to being a

distributor of construction equipment, operates a service department for its products. Thomsen manufactures concrete pumps, through a process in which it assembles components purchased from other manufacturers. One of the products it manufactured and sold through Goedecke to Dam Red–E–Mix was a Thomsen model 875 concrete pump.

This pump is mounted on the customer's truck, and is used to transmit wet concrete through a delivery system under pressure to a predetermined location. It has a 225 horsepower diesel engine which powers the hydraulic system of the pump, and also powers an alternator which energizes a 12 volt battery, that provides the electrical power needed to activate switches that control the speed of the pump which sucks the concrete from a holding hopper and pumps it to the area of the pour. Other switches direct the flow of electrical current to hydraulic valves which, when activated, control the speed and direction of a three-sectioned hydraulic powered boom, which carries the pipe sections and hoses through which the concrete flows to the pour area site.

There are two sets of switches. One set is located on the pump unit itself, while the other set is contained in a remote control box which is attached to the pump and boom by means of 100 foot cable containing electrical wires that run from the switch toggles to the various control hydraulic valves that control the speed of the pump and the speed and operation of the boom. Use of the remote control unit enables the operator to move some distance away from the truck to a position where he will have better visibility of the boom that is carrying the concrete.

In addition to the wires leading to the switches, the remote control box contains the switches and switch toggles. It is supposed to contain a sheet of insulating material known as "fish paper." A strip of this thin cardboard like material is bent into an oval shape by the employee assembling the control box, and is inserted into the control box so that it is between the wires leading into the box and the inner wall of the box.

It can be easily removed or replaced without disturbing the wires or switches, and its purpose, as explained by a company official, is "to keep moisture and so on . . ." presumably out of the control box. It is the last thing put into the control box by the assembler, after which he bolts the two sides of the box together by means of four metal bolts.

The machine was delivered to Dam Red–E–Mix on November 18, 1977. Later, one of the switches in the control box malfunctioned. Goedecke was called and their service representative, Harold White, on March 23, 1978, went to the location of the machine and opened the control box so that he could get the serial number of the defective switch so that another could be ordered to replace it. He testified that he did not remove anything from the control box. Sometime between March 23 and the date of the accident, Roger Crawley, an employee of Dam Red–E–Mix, disassembled the control box in order to attempt to repair a defective switch. During this procedure he removed what he called a "gasket" from the box. He said that what he removed was like a piece of cardboard and that it "just slips right into the interior of the box." When shown a sample of the fish paper Thomsen puts in the control box, Crawley said it looked "about the same" as the paper he took out of the box.

On April 12, 1978, Terry Michael White was operating the concrete pump at a job site in Camden County, Missouri. The job consisted of pouring a concrete holding tank floor at the bottom of a water slide called the Sun N' Slide. A batch truck, which is normally used for delivering concrete, could not be driven to the area where the concrete was to be poured, as the steep incline of the hillside location prevented such a procedure, so use of the concrete pump was required. To reach the desired area to pour the concrete, it was necessary for White to fully extend the boom through use of the electronic and hydraulic controls. After White and a fellow employee, Doug Berg, had finished the pour, White attempted to retract the boom in order to place it in its cradle on the pump. As he was maneuvering the boom by use of the remote con-

trol unit, a section of the boom came into contact with a three-phase power line carrying 12,470 volts that was strung over the area where White had parked the concrete pump truck. This contact caused the boom to become energized. The electrical current ran down the boom to the connection of the remote control electrical wires to the boom controls, and followed those wires to the remote control box that White was holding. White was instantly killed by electrocution. There was no evidence that he knew the control box was supposed to contain insulation, or that the insulation had been removed.

Following the accident, White's widow and children filed suit against Thomsen, Royal, and Goedecke. Count I of the petition alleged that (1) Royal and Thomsen manufactured the pump in question, including the remote control mechanism, and sold it to Goedecke, (2) that Goedecke sold the pump to Dam Red–E–Mix in November of 1977, and (3) that on April 12, 1978, while White, an employee of Dam Red–E–Mix, was operating the remote controls, the pump "malfunctioned by reason of defects therein" resulting in the machine (boom) coming into contact with the high voltage electrical wire causing the electrocution and death of White. As to the claimed defect, the petition alleged that (1) the pump's electronic controls were improperly insulated against electric shock, and as a result White suffered a fatal electric shock, (2) White was not aware of the defective condition of the concrete pump and its components, including the electronic control box, (3) the concrete pump and its components were dangerous when put to a use reasonably anticipated by the defendants, and (4) at all times the concrete pump and its components were being used by White in the manner reasonably anticipated by the defendants.

Count II of the petition, which plaintiffs later abandoned, was an action for breach of an alleged implied warranty by defendants that the concrete pump was safe and suitable for moving concrete at construction sites.

In their answers to the petition, defendants alleged, among other defenses, that White "misused" the product by operating the boom near electrical wires "against instructions on the boom and in the Operating Manual and when it was not safe to do so," and that White assumed the risk of his injury. They also alleged that White knew the danger in operating the machine in the manner in which he did, and that in so doing voluntarily and unreasonably exposed himself to the risks thereof, and that by so doing, directly caused or directly contributed to cause his own death.

At trial, defendants introduced evidence that White had been warned repeatedly of the danger of operating the concrete pump and its boom near high voltage electrical lines, but had ignored the warnings, and that his own actions in misusing the pump caused the accident. At the close of the evidence, plaintiffs offered instructions No. 7 and No. 11, which were their verdict directors against defendants. Defendants countered with offering instructions No. 8 and No. 12. All four instructions were given by the trial court and read as follows:

### INSTRUCTION NO. 7

Your verdict must be for Plaintiffs against Defendants Thomsen Concrete Pump Company and Royal Industries, Inc., if you believe:

First, Plaintiff Judy Lea White was the lawfully wedded wife and is the surviving widow of Terry Michael White; and Plaintiffs Sheila Denise White and Tammy Rene White are the surviving minor children of Terry Michael White, and

Second, Defendants manufactured the concrete pump in the course of Defendants' business, and

Third, the concrete pump was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and

Fourth, the concrete pump was used in a manner reasonably anticipated, and

Fifth, Plaintiffs were damaged as a direct result of such defective condi-

tion as existed when the concrete pump was manufactured;

unless you believe Plaintiffs are not entitled to recover by reason of Instruction Number 8.

## INSTRUCTION NO. 8

Your verdict must be for defendants Thomsen Concrete Pump Company and Royal Industries, Inc. if you believe:

First, when the concrete pump was used, decedent, Terry Michael White, knew of the danger as submitted in Instruction Number 7 and appreciated the danger of its use, and

Second, decedent voluntarily and unreasonably exposed himself to such danger, and

Third, such conduct directly caused or directly contributed to cause the death of decedent.

## INSTRUCTION NO. 11

Your verdict must be for Plaintiffs against Defendant Vernon L. Goedecke, Inc., if you believe:

First, Plaintiff Judy Lea White was the lawfully wedded wife and is the surviving widow of Terry Michael White; and Plaintiffs Sheila Denise White and Tammy Rene White are the surviving minor children of Terry Michael White, and

Second, Defendant sold or leased the concrete pump in the course of Defendant's business, and

Third, the concrete pump was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and

Fourth, the concrete pump was used in a manner reasonably anticipated, and

Fifth, Plaintiffs were damaged as a direct result of such defective condition as existed when the concrete pump was sold or leased;

unless you believe Plaintiffs are not entitled to recover by reason of Instruction Number 12.

## INSTRUCTION NUMBER 12

Your verdict must be for defendant Vernon L. Goedecke, Inc. if you believe:

First, when the concrete pump was used, Mike White knew of the danger as submitted in Instruction Number 11 and appreciated the danger of its use, and

Second, plaintiff voluntarily and unreasonably exposed himself to such danger, and

Third, such conduct directly cause [sic] or directly contributed to cause the death of Mike White.

After oral arguments, the case was submitted to the jury which returned verdicts against plaintiffs and in favor of all defendants.

The instructional error alleged by plaintiffs is that: "The trial court erred in giving defendants' instructions No. 8 and No. 12 in that said instructions were not supported by the evidence submitted in the case because said instructions refer to the danger as submitted in plaintiffs' verdict directing instructions No. 7 and No. 11, but there was no evidence in the case that Terry Michael White in fact knew of the danger as submitted in Plaintiffs' instructions No. 7 and No. 11."

Instruction No. 7 is plaintiffs' verdict director against Thomsen and Royal. Instruction No. 11 is their verdict director against Goedecke. Both instructions are patterned after MAI 25.04 which reads as follows:

**25.04 [1978 Revision] Verdict Directing–Strict Liability–Product Defect**

Your verdict must be for plaintiff if you believe:

First, defendant sold the *(describe product)* in the course of defendant's business, and

Second, the *(describe product)* was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and

Third, the *(describe product)* was used in a manner reasonably anticipated, and

Fourth, plaintiff was damaged as a direct result of such defective condition as existed when the (*describe product*) was sold.

*[unless you believe plaintiff is not entitled to recover by reason of Instruction Number ___ (*here insert number of affirmative defense instruction*)].

Notes on Use (1) provides that the "tail" should be added if defendants submit an affirmative defense.

Instructions No. 8 and No. 12 are attempts by defendants to submit the defense of contributory fault, and are patterned after MAI No. 32.23, which reads as follows:

**32.23 [1978 Revision] Affirmative Defenses–Product Liability–Strict Liability–Contributory Fault**

Your verdict must be for defendant if you believe:

First, when the (*describe product*) was used, plaintiff knew of the danger as submitted in Instruction[s] Number ___ [and ___] and appreciated the danger of its use, and

Second, plaintiff voluntarily and unreasonably exposed himself to such danger, and

Third, such conduct directly caused or directly contributed to cause any damage plaintiff may have sustained.

■ The defendants had the right to converse any or all of the elements of plaintiffs' case, including whether the remote control unit was dangerous when put to a reasonably anticipated use, or whether White was using the pump in a manner that was reasonably anticipated by the manufacturer. *Lietz v. Snyder Manufacturing Company*, 475 S.W.2d 105, 109–110 (Mo.1972); *Mead v. Corbin Equipment, Inc.*, 586 S.W.2d 388, 392 (Mo.App.1979). They did not choose to exercise this option, but chose to submit the affirmative defense of contributory fault. In asserting an affirmative defense of contributory fault, it must be shown that the user of the product "discovered the defect in the product and was aware of the danger, but nevertheless proceeded unreasonably to make use of the product and was injured by it. *Means v. Sears, Roebuck & Co.*, 550 S.W.2d 780, 786 n. 6 (Mo. banc 1977). *See also Uder v. Missouri Farmers Ass'n, Inc.*, 668 S.W.2d 82, 87 (Mo.App.1983).

In *Uder*, it was held that in addition to converse instructions, a defendant in a product liability case could also submit the affirmative defense of contributory fault through a proper instruction, but only "if the evidence supports it."

■ There was no evidence here to show that White knew of the lack of the fish paper in the control box, which was the claimed defect. If he did not know of the claimed defect, he could not have realized the danger of using a defective product. This being so, the giving of defendants' requested instructions No. 8 and No. 12 was error, as it was not supported by the evidence.

However, not all error is prejudicial error. Error in submission of instructions has been held to be ground for reversal "only if it can be demonstrated that the error could have contributed to an erroneous verdict." *Barnes v. Tools & Machinery Builders, Inc.*, 715 S.W.2d 518, 522 (Mo. banc 1986). Instructions No. 8 and No. 12 did not contribute to an erroneous verdict because plaintiffs did not make a submissible case. The question of whether a submissible case was made is inherent in every case that comes to an appellate court. *Lewis v. Renner*, 676 S.W.2d 909, 911 (Mo.App.1984). In cases where, as here, neither party claims to be aggrieved by submission of the case, we must make a finding of error on one of appellants' points relied on, which they raised on appeal, before we can approach the issue of submissibility. *Grippe v. Momtazee*, 696 S.W.2d 797, 799 (Mo. banc 1985). We have done so by finding instructional error.

The burden was on the plaintiffs to establish either that the claimed defect (absence of the fish paper inside the remote control box) existed at the time the box left the control of Thomsen in order to hold Thomsen and Royal liable, or that the paper was removed while in the control of

Goedecke in order to hold Goedecke liable. *Patterson v. Foster Forbes Glass Co.*, 674 S.W.2d 599, 603 (Mo.App.1984).

■ While the existence of a defect which occurred by reason of fault of a defendant may be inferred from circumstantial evidence, *Williams v. Ford Motor Company*, 411 S.W.2d 443, 447 (Mo.App. 1966), it must be shown that such inferences were reasonably probable, without resorting to guesswork or speculation. *Helm v. Pepsi–Cola Bottling Co. of St. Louis*, 723 S.W.2d 465, 469 (Mo.App.1986). Here, they were not.

■ There is nothing in the record to show, even by inference, that the fish paper had never been put in the control box through the fault of an employee of Thomsen and Royal, or had been taken out of the control box by an employee of Goedecke. The only evidence in the record concerning the lack of the fish paper in the control box, or its removal by anyone, came in the testimony of Roger Crawley, to which we have previously referred. Crawley was not an employee of Thomsen or Goedecke, but was an employee of Dam Red–E–Mix which had bought the pump from Goedecke. Dam Red–E–Mix and/or Crawley were not party-defendants.

The jury was left to speculate, without support of facts, as to whether 1) a Thomsen employee had neglected to put the fish paper in the remote control box when it was assembled, 2) the fish paper was taken out of the box by Goedecke after purchase of the pump from Thomsen, or 3) Crawley had taken the paper out of the box after the pump was purchased from Goedecke by Dam Red–E–Mix.

Since plaintiffs did not make a submissible case, defendants' motions for a directed verdict, filed at the close of all of the evidence, should have been sustained by the trial court. *See Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 882–84 (Mo.App.1985). Failure to do so was reversible error.

The instructional error was harmless, and ·the jury verdict for defendants was harmonious with what would have hap-pened if the trial court had sustained either of the motions for directed verdict filed by the defendants.

Judgment affirmed.

CROW, C.J., and HOLSTEIN, J., concur.