Madonna Lynn RAUSCHER,
Plaintiff–Appellant,

v.

GENERAL MOTORS CORPORATION, Paul Fusz Buick, Inc., and Bruno Guillemette, Defendants–Respondents.

No. 66502.

Missouri Court of Appeals,
Eastern District.

Sept. 5, 1995.

John H. Marshall, Clayton, for appellant.

Stephen L. Beimdiek, St. Louis, for Gen. Motors.

Bryan Martin Groh, St. Louis, for Paul Fusz.

F. Douglas O'Leary, St. Louis, for B. Guillemette.

CHARLES B. BLACKMAR, Senior Judge.

Madonna Rauscher filed suit against General Motors Corporation, Paul Fusz Buick, Inc., and Bruno Guillemette, seeking damages for personal injuries which she claimed she sustained in an automobile collision on June 5, 1986. The trial court directed a verdict in favor of General Motors and Fusz at the close of the plaintiff's evidence. The jury returned a verdict in favor of defendant Guillemette. The plaintiff appeals, claiming that the case should have been submitted to the jury against all three defendants, and that there was error requiring a new trial of her claim against Guillemette. We affirm as to Fusz and Guillemette, but reverse and remand for trial against General Motors. On the appeals against General Motors and Fusz the evidence is considered from the plaintiff's point of view, with any conflicts resolved in her favor. On the appeal against Guillemette the evidence supporting the verdict is taken as true, and the prevailing party is accorded all favorable inferences.

The plaintiff's father, David Rauscher, purchased a new Buick Century from Ackerman Buick in March of 1981. He chose to have needed service performed at Fusz rather than at Ackerman because it was much nearer the home. On May 29, 1981 David took the Buick to Fusz, complaining that the "engine hesitates and dies." This was its first trip to the shop, and the odometer showed 2476 miles. The problem did not stop after this visit, and on at least six occasions between the first service and September 25,

1985 the vehicle was taken to Fusz with similar complaints. Various solutions were tried and parts and assemblies replaced, but the problem still presented itself from time to time at irregular intervals. Sometimes Fusz would report that nothing was found. Tension developed between David and Fusz's service personnel about the continuing complaint.

After another unproductive visit to Fusz on September 25, 1985, and unsuccessful attempts to get in touch with local Buick representatives, David filed a complaint with the Buick division of General Motors, asserting that there was a defective emission control system and that the car had continued from the time of purchase to have incidents in which it would hesitate, stall, and die. General Motors scheduled an inspection at Mallory Buick on June 9, 1986, but the accident intervened. The car was returned to Fusz after the accident and repaired under General Motors' supervision. No other incidents were noted up to the time that the car was traded for a new one in 1987.

No repairs were made, parts replaced, or substantial maintenance performed at any facility other than Fusz's between the time of purchase and the time of the accident. David changed oil and replaced oil and air filters himself. He took the car to Fusz on several occasions for repairs or maintenance not related to the stalling and dying problem.

On the morning of June 5, 1986 the plaintiff, then age 16, was driving to school. She stopped at a stop sign, after which she undertook to cross the south outer road adjoining U.S. Highway 40 (Daniel Boone Expressway), in west St. Louis County, so that she could turn left and proceed west. Before she could cross the eastbound lane the Buick stalled and died. She tried to restart it but before she could clear the eastbound lane Guillemette's automobile struck the left rear portion of the Buick. Guillemette's different version of the accident is of no consequence in the appeals against General Motors and Fusz.

*1. The Appeal against General Motors*

■ The case against General Motors is based on the doctrine of strict liability, as stated in Sec. 402A, *Restatement (Second) of Torts,* (1965), and adopted by the Supreme Court of Missouri in *Keener v. Dayton Electric Manufacturing Co.,* 445 S.W.2d 362 (Mo. 1969). The essential elements of a strict product liability claim are set out in MAI 25.04 (1978 revision), and may be paraphrased as follows:

1. The defendant sold a product in the course of its business;

2. The product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use;

3. The product was used in a manner reasonably anticipated; and

4. The plaintiff was damaged as a direct result of such defective condition as existed when the product was sold.

We conclude that the plaintiff's evidence would permit a jury to find that each of these elements had been established. The trial judge should have sent the case to the jury rather than directing a verdict.

■ The jury has broad authority to determine whether a defective and unreasonably dangerous condition is present. *Nesselrode v. Executive Beechcraft, Inc.,* 707 S.W.2d 371 (Mo. banc 1986). A jury could surely find that an automobile subject to unpredictable stalls and stops, which might occur in traffic, was in a defective condition, and that the condition was unreasonably dangerous. Expert testimony would not be needed; jurors themselves could appreciate the danger by reason of their own experience. *See Crump v. MacNaught P.T.Y., Ltd.,* 743 S.W.2d 532 (Mo.App.1987) (in which the handle of a grease gun, nearly a year after it was purchased, became disengaged and struck a worker who was using it); *Patterson v. Foster Forbes Glass Co.,* 674 S.W.2d 599 (Mo.App.1984) (in which a baby bottle unpredictably exploded after a year's use); *Cf. Jacobson v. Broadway Motors, Inc.,* 430 S.W.2d 602 (Mo.App.1968). For more than four years, indeed, expert mechanics had been unable to analyze or correct the difficulty. It is not necessary for the plaintiff to demonstrate the precise nature of the defect. The action is based not on a defect, but on a defective condition. The danger is demon-

strated by the recurrence at unpredictable intervals, which might contribute to accidents such as the plaintiff sustained.

The jury could find that the condition was present at the time David purchased the car new. The problem first appeared within a very few months, with less than 2500 miles on the odometer, and prior to the time recommended for initial maintenance procedures. The same difficulty appeared, intermittently, up to the time of the accident. Prior to the first trip to Fusz the automobile was driven only on roads, and had no abnormal incidents. There was also evidence, in the form of General Motors' service bulletins and the testimony of mechanics, that some 1981 Buick Centuries were prone to stall and die. It matters not that these may have been a small proportion of the total Centuries produced. The presence of a similar defect in other cars of the same make and model is a circumstance the jury could consider in determining whether the vehicle was in a defective condition at the time of purchase. There are ample circumstances demonstrating that the Buick was then in a defective condition and continued in the same defective condition up to the time of the accident.

The case meets the test of *Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565, 573 (Mo.App.1977), in which Judge Stewart spoke as follows:

> We hold that once the plaintiff, in a case of strict liability, produces evidence that neither he nor any third person has made alterations to the product, which would create a defect that could be the proximate cause of the damages incurred, he has made a submissible case as to the issue of the existence of a defect at the time of sale or delivery of the product.

*Weatherford v. H.K. Porter, Inc.*, 560 S.W.2d 31 (Mo.App.1977) is distinguishable. There a worker was injured when a jack handle failed. The jack showed signs of considerable wear and the evidence did not show whether it was new or used at the time it was purchased by the plaintiff's employer. The opinion suggests strongly that a submissible case would have been made if the evidence had shown that a new jack had failed

the second time it was used. Likewise distinguishable is *Jasinski v. Ford Motor Co.*, 824 S.W.2d 454 (Mo.App.1992), in which there was a twelve year gap in the history of a vehicle alleged to be defective.

General Motors presents myriad arguments, most of which should have been addressed to a jury. It is suggested that the automobile was not in the same condition at the time of the accident as it was at the time of purchase, pointing to replacement of numerous parts and assemblies at Fusz, including replacement of the oxygen sensor, EGR valve, and other parts, and also the rebuilding of the carburetor. Replacement of parts is usual in the maintenance of a car which is driven for a long period. The jury could find that none of the replacement parts or maintenance procedures aggravated the condition which existed from the time of purchase. Some of the replacements, indeed, were made in an effort to correct the defective condition. Fusz was an authorized Buick repair facility, and General Motors would expect that a Buick which had operating problems might be taken there for diagnosis and service. The automobile, with 64,000 miles on it, was a veteran of the highways, but the owner still had the right to expect that it would not be unreasonably dangerous. The suggestion that the defect was caused by David's improper installation of new air filters is also a matter for the jury to consider. He testified in detail about the ownership, use and servicing of the car. There was no indication in his testimony of any accident or misuse which contributed to the defect. If the jury is persuaded that the defect existed at the time of purchase, then the plaintiff is not obliged to pinpoint the cause. *See Nesselrode v. Executive Beechcraft, Inc.; Crump v. MacNaught P.T.Y., Ltd.; Patterson v. Foster Forbes Glass Co.; Jacobson v. Broadway Motors, Inc., supra.* Inasmuch as the symptoms described by the Rauschers are the same, the jury may conclude that they were a manifestation of an initial defect which continued up to the time of the accident.

■ In a second point General Motors argues that the plaintiff admitted that she knew the Buick was dangerous, and that she

is barred from recovery by the doctrine of contributory fault. Because the accident happened in 1986, Sec. 537.765, RSMo 1994, has no application, and the case is governed by the principles of *Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491 (Mo. banc 1986), holding that the plaintiff's recovery is not to be diminished on account of her own negligence. Recovery could be completely barred, however, on the basis of "contributory fault," which is a species of assumption of risk. The elements are set out in MAI 32.23. General Motors seizes upon the plaintiff's admissions that she had been a passenger in the Buick when a stalling incident occurred, and that the car was dangerous to drive before the accident. It cites *Ensor v. Hodgeson*, 615 S.W.2d 519 (Mo.App.1981), *Strang v. Deere & Co.*, 796 S.W.2d 908 (Mo.App.1990), and *Boyer v. Eljer Manufacturing Inc.*, 830 S.W.2d 535 (Mo.App.S.D.1992), with this last case holding that the evidence did not permit the submission of the issue of contributory fault to the jury. Under these cases contributory fault, when supported by evidence, is a question for the jury, and General Motors should have advised us in its brief of their precise holdings.

We are cited to no case in which a court found contributory fault as a matter of law. Such a holding would be inappropriate in this case for several reasons. The jury might consider that the admissions in plaintiff's testimony were made in the hindsight of the accident, rather than indicating her state of mind at the time she undertook to drive the car to school. It could take into account her age, her parents' having given her permission to drive the car, and the number of times she had experienced the defective performance. It is also of interest that Fusz had notice of the problem for five years, and General Motors for several months, yet neither suggested that the Buick was dangerous to drive. The court would not be justified in directing a verdict on the basis of contributory fault.

■ The jury, therefore, could have returned a verdict for the plaintiff and against General Motors, on a MAI 25.04 submission. By no means was it compelled to do so. It apparently was not impressed by the plaintiff's claim against Guillemette, and might well have found in favor of General Motors. We reiterate the caution that trial judges should direct verdicts only in clear cases. It is better to take the jury's verdict and then take appropriate action on posttrial motions.

## 2. The Appeal against Fusz

■ The plaintiff alleges error in directing a verdict against her and in favor of Fusz on her claim of negligent repair. Its alleged fault lay in not discovering and correcting the defect which caused the vehicle to stall and die. The ruling was correct because there was no evidence of the prevailing standards in automobile repair, sufficient to permit a finding of negligence. In claims for negligent repair, expert testimony is almost always required because the jurors are unfamiliar with the business of repairing automobiles. See *Forrest v. Chrysler Corp.*, 632 S.W.2d 29 (Mo.App.1982); *McMahon v. Charles Schulze, Inc.*, 483 S.W.2d 666 (Mo. App.1972). *Fancher v. SouthWest Missouri Truck Center, Inc.*, 618 S.W.2d 271 (Mo.App. 1981) does not help the plaintiff. There the evidence showed that the defendant had committed an affirmative act of negligence in installing a part of the wrong size in overhauling the front differential of a truck.

## 3. The Appeal against Guillemette

The plaintiff seeks a new trial against Guillemette on the basis of two alleged errors. We find no prejudicial error and conclude that Guillemette is entitled to hold his verdict.

■ During opening statement General Motors referred to Guillemette's deposition testimony that he was not injured. The plaintiff's objection on ground of materiality was overruled. The ruling was correct. The absence of injury to Guillemette is a circumstance that the jury could consider, in assessing the defendants' claim that the plaintiff was not injured. See *Biener v. St. Louis Public Service Co.*, 160 S.W.2d 780 (Mo.App. 1942) (in which injuries to others were held to be admissible to demonstrate the force of a collision). It makes no difference that one party to a collision may suffer severe injuries while another is uninjured. Evidence does

not have to be conclusive in order to be admissible.

The plaintiff also points to Guillemette's confusion at the time he was deposed as to the speed limit, and the reiteration of this confusion at the trial. There was no evidence that Guillemette was exceeding the speed limit, and no submission of his excessive speed as a possible cause of the accident. Had the speed limit been in issue the parties could have taken steps to adduce the appropriate ordinances. It is suggested that his confusion on the point could be considered in assessing Guillemette's credibility. We perceive no substantial credibility problem in his demonstrated confusion. Pursuant to Rule 84.13(b) reversal is appropriate only for prejudicial error, and we find none.

The judgments against the plaintiff and in favor of Fusz and Guillemette are affirmed. The judgment in favor of General Motors is reversed and the case is remanded for retrial.

WILLIAM E. TURNAGE, Senior Judge and WHITE, P.J., concur.