335 F.Supp.2d 992 (2004)
Donald SHAFFER, Plaintiff,
v.
AMADA AMERICA, INCORPORATED, Defendant.
No. 4:01-CV-1767 CDP.
United States District Court, E.D. Missouri, Eastern Division.
January 6, 2003.
*993 William J. Meacham, Meacham Law Office, P.C., Edwardsville, IL, for Plaintiff.
Richard A. Mueller, Carl J. Pesce, Thompson Coburn, St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER
PERRY, District Judge.
In March 2001, Donald Shaffer, a service engineer for Amada Engineering and Service, Inc.,[1] was injured while servicing a press brake machine at the Newco Company's St. Charles, Missouri plant. As Shaffer was adjusting lower ram position of the up-acting press brake, the Amada model RG5020LD, somehow his right hand came between the lower ram of the machine and the upper die. As the machine cycled upward, Shaffer's fingers were crushed. He eventually lost multiple fingers.
Shaffer sued Amada America, Inc., the seller of the press brake, claiming that it was defectively designed. Both parties retained experts, and both parties have filed motions in limine to exclude certain testimony offered by these experts. Additionally, Amada America has moved for summary judgment. For the reasons discussed below, I will grant Amada America's motion in limine with respect to Farid Amirouche  Shaffer's only expert witness regarding defective design of the press brake  and, as a consequence, I will also grant Amada's motion for summary judgment.
I. Facts
On March 1, 2000 Donald Shaffer went to the Newco Company's plant in St. Charles, Missouri, to repair a broken control switch on one of Newco's newer machines, the Amada model RG5020LD. After Shaffer finished this task, he was asked *994 by Newco employee Mark Herbert to fix another problem with the machine. Herbert told Shaffer that the lower ram on the press brake was slipping from its lower set point.
Shaffer went through several cycles of the machine to examine the problem, using the treadle bar (a bar located at the base of the machine which is depressed in order to start the cycling of the press brake). Mark Herbert was standing behind him looking over Shaffer's right shoulder. At some point, plaintiff was injured when his hand and several of his fingers were caught between the lower ram and the upper die.
Schaffer has made several statements, but he cannot remember exactly how the accident happened. Eyewitnesses and Amada employees to whom Shaffer recounted the events are similarly uncertain of exactly how Shaffer's hand got between the ram and the die.
Shaffer retained Dr. Farid Amirouche as an expert witness. Dr. Amirouche is prepared to testify to the following six opinions:
1. The treadle bar of the machine is dangerous and unreliable because there is excessive "travel" in the bar that leads to operator instability.
2. The ram should have some sort of support built into the front of it, such as a ledge or a platform that extends outward, on which plaintiff could have rested his hand.
3. A foot-operated electric or pneumatic switch would have prevented the accident because it would not have excessive "travel" like the treadle bar and because it could be moved farther away from the machine.
4. Safety guards of a mechanical/sensory nature would have prevented the accident. Examples of mechanical guards would be a block or a steel rod to place in the machine while it is being serviced to prevent the ram and die from closing. Examples of sensory guards would be a "light curtain" or a force-field that would detect the presence of a foreign object in the press and cause it to stop.
5. A safety manual should have been provided to Shaffer before the accident.[2]
6. Plaintiff's accident must have happened because he lost his balance with his foot on the treadle bar and then placed his hand on the lower ram in order to steady himself.
Dr. Amirouche has a Ph.D. in Mechanical Engineering and has for approximately twenty years taught courses such as Mechanical Engineering, Design, and Biomechanics at the University of Illinois at Chicago. He has written a recently-updated book called Principles of Computer-Aided Design and Manufacturing, but he admits that the pertinent chapters of his book focus more on computer-automated press brakes, rather than on operator-run brakes, such as the RG5020LD.
Dr. Amirouche has limited experience with press brakes. He operated a press brake perhaps four or five times during the course of his undergraduate engineering studies in 1977. Also while in school, in 1979, he saw a press brake being operated. He has never conducted any research on press brakes or guards for press brakes independent of this litigation. At a conference for the National Institute of Health and Safety in 1999, Amirouche participated *995 in a committee meeting that spent about forty minutes discussing press brakes over the course of the two-day conference. Dr. Amirouche has not published any articles regarding press brakes.
II. Defendant's Motion in Limine Dr. Amirouche
Shaffer has proffered the testimony of Dr. Amirouche, to prove the defectiveness of the press break. Amada has moved to exclude all expert testimony offered by Dr. Amirouche under Rule 702 and the requirements of Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Rule 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product or reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
Fed.R.Evid. 702.
Under Daubert, the Court must determine whether the reasoning and methodology underlying the proposed expert's testimony is valid. Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 297 (8th Cir.1996). In making this inquiry, Daubert offers four non-exclusive factors: (1) whether the concept has been tested, (2) whether the concept has been subject to peer review, (3) what the known rate of error is, and (4) whether the concept is generally accepted by the community. Daubert, 509 U.S. at 593-95, 113 S.Ct. 2786.
Dr. Amirouche fails the Rule 702 and Daubert requirements for admissibility of expert testimony. First, Dr. Amirouche's testimony is unreliable. It is not based on sufficient facts and data. Dr. Amirouche has virtually no experience with press brakes, other than his participation in a forty-minute discussion of press brakes during a two-day conference, and the limited experience he had during his undergraduate studies approximately 25 years ago. Although he reviewed some information about press brakes on the internet, none of that information provided a basis for his opinions.
Second, Dr. Amirouche has not designed or tested the devices he claims would have prevented Mr. Shaffer's accident. He has not even sketched any of these possible alternative designs. He has no knowledge as to whether any of his proposals would work or would interfere with the normal operation of the press brake. Similarly, Amirouche offers no quantifiable evidence to support his theory that excessive "travel" in the treadle bar caused the accident. He has simply made on-site measurements that he recorded in a one-page handwritten note, purporting to show the "travel," but not tying that "travel" to any cause of the accident.
Third, there has been no peer review of Dr. Amirouche's theories of alternative design. Because there has been no testing of the alternative designs, we also do not know the potential rate of error. Finally, there is no evidence of the general acceptance of Amirouche's abstract theory that his laundry list of devices would have prevented the accident.
Shaffer claims Dr. Amirouche is similar to the expert who was admitted in Lauzon v. Senco Prods., 270 F.3d 681 (8th Cir.2001), which involved an allegedly defective nail gun. In Lauzon, the expert conducted various scientific tests in arriving at his opinion that the nail gun was defective  he measured the trigger force of the *996 gun and the nail speed from various distances, conducted a pendulum test to measure recoil forces, and recreated the roof where the accident occurred. Id. at 688-89. Moreover, the plaintiff's proferred expert published an article about the allegedly defective nail gun in the Journal of the National Academy of Forensic Engineers. Id. at 690. He also consulted two specific articles regarding nail gun injuries and the alternative design he was advocating. Id.
Dr. Amirouche stands in stark contrast to the controverted expert in Lauzon. The extent of his examination of the actual machine, as well as the information gathered from Newco employees regarding the normal operation of the press brake during his only visit to the Newco plant, covered only one handwritten page of notes. It is estimated that this visit to the Newco plant took only ninety minutes.
Amirouche lacks even a comprehensive understanding of how the press brake at issue works. For instance, Amirouche does not know where the press brake's "on/off" switch is located. He does not know what mechanism is actuated by use of the treadle bar  which he claims is defectively designed unreasonably dangerous. Amirouche Depo. at 246 ("I did not really look at that machine in particular, finding out whether it's a gear system or hydraulic system, electrical system, motor of some sort that actually keep  you know, moves it, you know."). Dr. Amirouche admits that the only literature he consulted specific to the press brake at issue in this case was the operator's manual and the parts list. He did not test his theories to see whether the general safety measures he proposes would actually work on the RG5020LD without altering the purpose for which the machine is used (bending coffee pot component parts). Moreover, unlike the Lauzon expert, Dr. Amirouche made no attempt to either quantify his findings of excessive "travel" in the treadle bar, like measuring the force required to activate the machine. Nor has he subjected his "research"  which was almost exclusively documents he gathered from the Internet solely for the purpose of this litigation  and assorted theories of alternative design to peer review. The fact that Dr. Amirouche is a professor and an engineer does not grant him license to label as "scientific" unsubstantiated or overly broad opinions.
Despite Shaffer's protestations, Dr. Amirouche is similar to the experts in several cases that were mentioned in Lauzon. For instance, in Jaurequi v. Carter Manuf. Co. Inc., 173 F.3d 1076, 1080 (9th Cir.1999), the Eighth Circuit affirmed the exclusion of the plaintiff's proffered expert who attempted to testify that the corn head on a combine was defective because it lacked "awareness barriers" that warned of the hazard zone where the gathering chains of the combine emerged from the snout of the machine. The expert did not study the feasibility of this idea, much less design or test it. Id. He was unaware of any study regarding the effectiveness of such a barrier or of any manufacturer incorporating such an idea into a finished product. Id. As with Dr. Amirouche's proposals, the Jaurequi expert did not "construct or even draw the suggested device, much less test its utility as a safety device or its compatibility with the corn head's proper function." Id. at 1084, the district court excluded the proffered testimony of an expert who wished to testify that a tire changing machine was unreasonably dangerous. The proposed expert opined that the tire changing machine acted as a "launch pad" for an over inflated tire, an effect that he said could be reduced with several changes he proposed. Id. However, like Dr. Amirouche, the expert had neither designed nor tested the proposed design for safety or utility, although (unlike Dr. Amirouche) he had *997 drawn some rough sketches. Id. These sketches were not adapted into engineering drawings, much less actual prototypes. Id. Again, similar to Dr. Amirouche's proposed changes, none of the Peitzmeier expert's proposed changes were subject to peer review. Id. The Eighth Circuit affirmed the district court's decision to exclude the expert's testimony. Id. The Eighth Circuit affirmed the district court's decision to exclude the expert's testimony. Id. at 298. See also Dancy v. Hyster Co., 127 F.3d 649 (8th Cir.1999) (Affirming exclusion of expert testimony that forklift used by defendant should have a guard where expert had not tested his theory or designed the alternative guard).
Because I find that the proposed testimony of Dr. Farid Amirouche does not satisfy the requirements of Rule 702 and cannot survive a Daubert challenge, I will grant Amada's motion in limine and exclude his testimony.
III. Summary Judgment Motion
In determining whether summary judgment should issue, the Court views the facts and the inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that genuine issue of material fact exists. Fed.R.Civ.P. 56(c). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S.Ct. 2548.
Missouri law requires Shaffer to prove the following elements: (1) Amada America sold the press brake in the course of its business; (2) the press brake was in a defective condition that made it unreasonably dangerous when put to a reasonably anticipated use; (3) the press brake was used in a manner reasonably anticipated; and (4) Shaffer was damaged by the defective condition that existed when the product was sold. Rauscher v. General Motors, 905 S.W.2d 158, 160 (Mo.Ct.App.1995) Amada America was shown that the record is devoid of any admissible evidence as to the second element  that the press brake was in a defective condition that made it unreasonably dangerous to operate. Because of this complete failure of proof on an essential element, Amada is entitled to judgment as a matter of law.
Plaintiff has filed depositions of Amada Engineering employees James Donald Rush, John Porco, and Themis Alexopoulos. These additional filings do not establish the defectiveness or unreasonable dangerousness of the RG5020LK press brake that Mr. Shaffer was repairing the day he was injured. The Alexopoulos and Rush depositions do establish that Amada offered some extra guarding devices at the time the RG5020LK was sold to Newco, but it does not follow from this evidence that the RG5020LK is defective without these devices or that they would have prevented the accident that occurred here.
The law is not so rigid as to require a manufacturer to sell only those products equipped with every available safety device. Linegar v. Armour of America, Inc., *998 909 F.2d 1150, 1154 (8th Cir.1990). And the absence of an available safety feature does not, by itself, mean a product is defective. Missouri law, instead, "demands that we focus our efforts on defects that are unreasonably dangerous." Sandage v. Bankhead Enterp., Inc., 177 F.3d 670, 673 (9th Cir.1999).
This is not a case like Patterson v. Foster Forbes Glass Co., 674 S.W.2d 599 (Mo.Ct.App.1984), where the circumstantial evidence presented would allow a jury to find defect without expert testimony. In Patterson a baby bottle exploded, sending shards of glass that severed tendons in a mother's hand. Id. at 601. This case is not so simple.
This case involves a complex piece of industrial machinery. Because a finding of defect cannot rest on conjecture or speculation, Crump v. MacNaught P.T.Y., Ltd., 743 S.W.2d 532, 534 (Mo.Ct.App.1987), Shaffer needs competent expert testimony to establish that this press brake is defective and unreasonably dangerous. Without expert testimony, we are left with evidence of an accident. The fact that an accident happened, standing alone, does not establish a case of product defect. Winters v. Sears, Roebuck, & Co., 554 S.W.2d 565, 571 (Mo.Ct.App.1977).
Plaintiff's remaining expert, Dr. Mandara Savage, does not provide sufficient expert testimony regarding the allegedly defective condition of the RG5020LK press brake to save the case from summary judgment. Dr. Savage only opines that an OSHA standard was violated when Shaffer, following Amada Engineering's procedure, attempted to fix the press brake. But even if the OSHA regulations provide the standard of care for workers such as Mr. Shaffer, Savage's testimony is not helpful to the essential inquiry in this case  whether the product was in a defective condition when put to a reasonably anticipated use. Savage's testimony regarding Shaffer's working conditions is therefore insufficient to overcome Amada's motion for summary judgment.
IV. Conclusion
The opinions and testimony of Dr. Farid Amirouche do not meet the requirements for expert testimony, as set forth in Fed.R.Evid. 701 and Daubert. Without this testimony, there is no evidence that plaintiff can introduce that could prove that the Amada RG5020LK is defective and unreasonably dangers, and I will therefore grant Amada's motion for summary judgment. Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [# 31-1] is granted;
IT IS FURTHER ORDERED that Defendant's Motion In Limine to Exclude the Testimony and Opinions of Dr. Farid Amirouche [# 37-1] is granted;
IT IS FURTHER ORDERED that all other pending motions are denied as moot.
A separate judgment in accord with this Memorandum and Order is entered this same date.
NOTES
[1] Amada Engineering merged with defendant Amada America, Inc., in July 2001, after the accident.
[2] Plaintiff has never pleaded a failure to warn theory. As a result, I will not address this opinion of Dr. Amirouche. Additionally, the evidence indicates that a manual was attached to the machine, but the expert was not aware of that when he wrote his report.