**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 28 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JEANNINE VANOVER, in her
individual capacity and as
administratrix of the Estate of Samuel
D. Vanover; DAVID VANOVER,
SAM VANOVER,

        Plaintiffs - Appellants,

    v.

ALTEC INDUSTRIES, INC., an
Alabama corporation,

        Defendant - Appellee.

No. 03-5016
(D. Ct. No. 01-CV-285-K)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, **ANDERSON** and **HENRY**, Circuit Judges.

Plaintiff-Appellants Jeannine Vanover, et al., ("the Vanovers") brought

Missouri state-law products liability, breach of warranty, and negligent

maintenance claims after decedent, a technician for an electric company, was

electrocuted while working in an aerial lift. The district court granted Defendant-

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellee Altec Industries, Inc. ("Altec") summary judgment on insufficiency of the evidence grounds. We AFFIRM.

## I. Background

Decedent was employed by the Par Electric Company as a lineman. On April 19, 1999, in Warrensburg, Missouri, he was working in an aerial lift device ("the lift"). The lift consists of a boom mounted on a truck with a work platform, or "bucket," attached that lifts electrical technicians to work on power lines. Decedent and his coworker, Eugene Barkley, were in the lift installing a non-energized line onto an insulator, while the third member of the crew, John Frank, remained on the ground operating the lift. To perform this work, Frank passed the bucket underneath energized lines and then elevated it to a position two to three feet from an energized line.

Immediately prior to the accident, decedent was lifting a grounded, non-energized line to install it. During this process, Mr. Barkley heard and felt a large explosion, which knocked him down. Mr. Barkley turned and saw fire moving over the top of the bucket and heard loud noises. Mr. Barkley saw decedent slumped on his knees over the edge of the bucket with his shirt ablaze. Mr. Barkley attempted, in vain, to extinguish the flames on decedent's shirt. Simultaneously, Mr. Frank told a passerby to call 911 and took manual control of the lift's boom in an effort to bring it to the ground. Mr. Frank managed to move

-2-

the bucket laterally, away from the power lines. When he began to lower the bucket, however, a second explosion occurred, which engulfed the bucket in fire. The boom's controls seized. Mr. Barkley leapt from the bucket, while Mr. Frank attempted to extinguish the flames from the ground. Although the fire was intense, the autopsy report indicates that decedent died as a result of electrocution.

Approximately a week earlier, Altec, the lift's manufacturer, repaired the boom control handle mounted in the bucket, pursuant to a warranty issued to the electric company.[1] Prior to this repair, the "O-ring" on the control handle leaked hydraulic fluid. After the accident, Mr. Barkley observed a smudged residue on the corner of the bucket, which looked to him like a "wipe up" of hydraulic fluid. Mr. Barkley also testified that a day or two before the accident, he noticed oil leaking from the bucket-control handle.

The Vanovers, as personal representatives and heirs, sued Altec in the Northern District of Oklahoma pursuant to diversity jurisdiction. 28 U.S.C. § 1332. The district court held, and the parties on appeal concur, that Missouri law applies. The Vanovers brought three theories of recovery: (1) products

---

[1]Altec's computer records indicate that the repair took place on April 22, 1999, but hand-written records show that the repair occurred on April 12, 1999. The district court found that, because the bucket was essentially destroyed in the fire on April 19, 1999, Altec's position that the computer record resulted from a typographical error was the only believable view as to the date of repair.

liability (both design defect and manufacturing defect), (2) breach of warranty,[2] and (3) negligent repair. The manufacturing-defect and negligent-repair claims rely on the same circumstantial evidence. These claims assert that a manufacturing defect, or excess hydraulic fluid negligently left on the bucket after the repair, compromised the dielectric properties[3] of the bucket. This caused a path to the ground to be formed from the adjacent energized line through the decedent and the boom.

As to the design-defect claim, the Vanovers contend that the boom should have incorporated a manual release device capable of overriding the mechanism that locks the boom in place following a loss of hydraulic pressure, allowing the boom to lower to the ground in emergency situations. With the presence of such a device, the Vanovers contend that the boom could have been lowered and decedent could have received emergency CPR. To support this release-device theory, the Vanovers sought to present the expert testimony of mechanical engineer R. K. Tessman, Ph.D.

---

[2] The Vanovers, in their motion opposing summary judgment, conceded that, under Missouri law, the products liability claim subsumes their breach of warranty claim, citing *Sharp Brothers Contracting Co. v. American Hoist & Derrick Co.*, 703 S.W.2d. 901 (1986). We accept the Vanovers' position on this matter for the purposes of this appeal and omit any further independent reference to the Vanovers' breach of warranty claim.

[3] The property of certain materials to inhibit the flow of electricity, effectively insulating the occupants of the bucket from electric shock.

Altec moved for summary judgment, which the district court granted. The district court, considering the manufacturing-defect and negligent-repair claims, held that the Vanovers presented insufficient evidence to support an inference that a dielectric failure of the bucket caused decedent's injuries. As to the design-defect claim, the district court held that the proposed expert testimony of Dr. Tessman was inadmissible under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Thus, the district court held that the Vanovers presented insufficient evidence to state a claim under any theory of recovery. The Vanovers timely filed their notice of appeal. We take jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

II. Discussion

A.    Standard of Review

We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir.1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the

nonmoving party. *Byers*, 150 F.3d at 1274.

Although the movant must show the absence of a genuine issue of material fact, she need not negate the nonmovant's claim. *See Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996). Once the movant carries this burden, the nonmovant cannot rest upon her pleadings, but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [she] carries the burden of proof." *Id.* "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

We review a district court's decision to exclude evidence at the summary judgment stage under the same standard we use when an evidentiary ruling reaches us after trial. *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 854 (10th Cir. 1999). When reviewing a *Daubert* ruling,

> we review de novo the question of whether the district court performed its gatekeeper role and applied the proper legal standard in admitting an expert's testimony. We then review for abuse of discretion the trial court's actual application of the gatekeeper standard in deciding whether to admit or exclude an expert's testimony. The trial court's broad discretion applies both in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability. Accordingly, we will not disturb the district court's ruling unless it is arbitrary, capricious, whimsical or

-6-

manifestly unreasonable or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. *Goebel v. Denver & Rio Grande Western R.R. Co.*, 346 F.3d 987, 989-90 (10th Cir. 2003) (internal quotations omitted) (citations omitted).

B.      The Manufacturing-Defect and Negligent-Repair Claims

We affirm the district court's ruling that the Vanovers fail to present sufficient evidence of causation on either the manufacturing-defect or the negligent-repair counts. Both parties on appeal agree that the Vanovers present a circumstantial-evidence case in regard to the manufacturing-defect and negligence claims.[4] Missouri law allows such an approach. *See, e.g., Daniel v. Indiana Mills & Mfg., Inc.*, 103 S.W.3d 302, 309 (Mo. Ct. App. 2003) ("The existence of a defect may be inferred in a products liability action from circumstantial evidence."); *United Missouri Bank, N.A. v. City of Grandview*, 105 S.W.3d 890, 899 (Mo. Ct. App. 2003) ("[A] plaintiff is not required to prove all elements of

---

[4]Under Missouri law, the elements of a strict-liability manufacturing-defect claim are: "(1) The defendant, wherever situated in the chain of commerce, transferred a product in the course of his business; and (2) The product was used in a manner reasonably anticipated; and (3) . . . (a) The product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold . . . ." Mo. Rev. Stat. § 537.760. The elements of a negligent-repair claim are: "1) the existence of a duty; 2) breach of that duty; 3) injury proximately caused by breach of that duty; and 4) actual damages." *In re Complaint of Jessup for Exoneration from, or Limitation of, Liab.*, 196 F. Supp. 2d 914, 918 (E.D. Mo. 2002) (applying Missouri law to a negligent repair of a yacht claim) (citing *Hoover's Dairy, Inc. v. Mid- Am. Dairymen, Inc./Special Prods., Inc.*, 700 S.W.2d 426, 431 (Mo. 1985)).

negligence by direct evidence. The elements of negligence may be shown by circumstances from which they may be inferred.").

Missouri law distinguishes between circumstantial evidence that supports reasonable inferences, which constitutes a claim submissible to the jury, and mere speculation, which does not. Proof of the essential elements of a claim by circumstantial evidence may be used only when the circumstantial evidence establishes the inferred fact "with such certainty as to cause it to be the more probable of the conclusions to be drawn." *Vaughan v. Taft Broadcasting Co.*, 708 S.W.2d 656, 661 (Mo. 1986); *see also Morris v. Israel Brothers, Inc*., 510 S.W.2d 437, 442 (Mo. 1974). Circumstantial evidence "must rise above the stature of guesswork, speculation or surmise." *Rusk Farms, Inc. v. Ralston Purina Co.*, 689 S.W.2d 671, 680 (Mo. Ct. App. 1985). The plaintiff bears the burden of showing that "the circumstances proved . . . point reasonably to the desired conclusion and [that they] tend to exclude any other reasonable conclusion." *Hale v. Advance Abrasives Co.*, 520 S.W.2d 656, 658 (Mo. Ct. App. 1975).

The Missouri Court of Appeals faced a situation similar to the present dispute in *White v. Thomsen Concrete Pump Co.*, 747 S.W.2d 655 (Mo. Ct. App. 1988). In that case, plaintiffs brought a products liability claim against a manufacturer after the electrocution of the decedent. *Id*. at 658. Decedent suffered his fatal injuries when the boom and concrete pump, attached to a cement

truck, touched an energized power line. *Id*. Plaintiffs in *White* relied on circumstantial evidence to prove causation, arguing that, although no direct evidence showed that an agent of the defendant-manufacturer had either removed or failed to install the control box's electrical insulation, a jury could infer such a result from decedent's electrocution. *Id*. at 660-61. The Missouri Court of Appeals held that plaintiffs failed to make a submissible case because "[t]he jury was left to speculate, without support of facts, as to whether" defendant-manufacturer failed to remove or install the insulation. *Id.* at 661.

Here, the Vanovers offer neither evidence that the lift's boom touched an energized line nor evidence that excess hydraulic fluid can compromise dielectric properties. In fact, the Vanovers offer even less evidence from which to infer a dielectric defect than that found insufficient in *White*. Even assuming arguendo that excess hydraulic fluid would cause a dielectric defect, the district court held that the Vanovers fail to offer evidence that the boom touched an energized line. The Vanovers, on appeal, fail to identify any evidence in the record to the contrary. Although we are not obligated to comb through the record to locate material not referenced by parties, *see Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998), we find the record devoid of any evidence that the boom touched an energized line. Thus, even if the bucket's insulation was compromised, the Vanovers fail to offer evidence that the uninsulated bucket

touched an energized wire.

Given the lack of any evidence from which to infer a dielectric defect, we hold that the district court did not err in granting summary judgment for Altec. "[T]he mere fact of an accident, standing alone, does not generally make out a case that a product [is] defective." *Winters v. Sears, Roebuck & Co.*, 554 S.W.2d 565, 570 (Mo. Ct. App. 1977) (internal quotations omitted). While it is conceivable that the lift's boom touched an energized line and that the smudge of hydraulic fluid compromised the bucket's dielectric properties, this theory is not submissible because it does not "rise above the stature of guesswork, speculation or surmise." *Rusk Farms*, 689 S.W.2d at 680. Under this sparse set of facts, it is at least equally possible that the non-energized, but grounded, line being hauled up by decedent came into contact with an energized line. *See Ward by Walker v. McQueen*, 670 S.W.2d 176, 177 (Mo. Ct. App. 1984) ("It is not enough, however, that the evidence show equally possible yet inconsistent conclusions, as a verdict for plaintiff based on one of them would necessarily be merely conjectural and speculative.") (citation omitted).

The Vanovers argue that our conclusion "virtually eliminat[es] the use of circumstantial evidence." We disagree. Missouri law requires that, in a circumstantial-evidence case, the facts forming the basis for the inference be of "such certainty as to cause [the inference] to be the more probable of the

conclusions to be drawn." *Vaughan*, 708 S.W.2d at 661. Because the Vanovers fail to meet this standard, our decision merely applies well-settled Missouri law. *See White*, 747 S.W.2d at 661.

We also disagree with the Vanovers' contention that our conclusion runs contrary to *Rauscher v. General Motors Corp.*, 905 S.W.2d 158 (Mo. Ct. App. 1995). In *Rauscher*, plaintiff presented testimony that he took his car to the shop six times to correct an engine stalling problem and that the model of car he owned had a history of stalling due to a defective emission control device. *Id*. at 160-61. The Missouri Court of Appeals held that this testimony constituted sufficient circumstantial evidence of a defective emission control device to merit submission to the jury. *Id*.

Here, the Vanovers offer no comparable evidence. For instance, the Vanovers present no evidence that the boom touched an energized wire or that excess hydraulic fluid compromises dielectric properties. Thus, the Vanovers' citation to *Rauscher* is without merit. [5]

C.    The Design-Defect Claim

We also affirm the district court's ruling finding the testimony of Dr.

---

[5]While the Vanovers relied upon *res ipsa loquitur* below, they do not brief the issue on appeal. Thus, we do not address it. *See, e.g., State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n. 7 (10th Cir. 1994) (holding that failure to brief an issue on appeal constitutes waiver).

Tessman inadmissible and that, absent his testimony, the Vanovers offer insufficient evidence to support their design-defect claim, entitling Altec to summary judgment. Dr. Tessman sought to testify that the absence of an instrument to override the mandatory load-holding safety device constitutes a design defect. The Vanovers do not argue in their brief that the district court applied the wrong standard to Dr. Tessman's testimony pursuant to Fed. R. Evid. 702 and *Daubert,* 509 U.S. 579 (1993), or that the district court abused its discretion in its application of the Rule 702 and *Daubert* standards. Thus, we affirm for substantially the same reasons given by the district court.

*Daubert* changed the law of evidence by establishing a "gatekeeper" function for trial judges under Fed. R. Evid. 702. "Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592.

> "The Supreme Court [in *Daubert*] listed four nonexclusive factors that the trial court may consider in assessing reliability: (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community." *Hollander v. Sandoz Pharmaceuticals Corp*., 289 F.3d 1193, 1205 (10th Cir. 2002).

Dr. Tessman's testimony regarding the alternative design does not satisfy this standard. Dr. Tessman is not a designer of boom trucks or aerial lifts; he has no education or experience with such lifts; his proposed design is untested and unpublished. We therefore agree with the district court that Dr. Tessman's testimony regarding the alternative design theory is inadmissible. For similar reasons, we find Dr. Tessman's testimony regarding the hydraulic fire inadmissible. Absent this testimony, the Vanovers offer no evidence to support their design-defect claim, thereby entitling Altec to summary judgment on this claim. *See Jenkins*, 81 F.3d at 990 (the nonmovant cannot rest upon her pleadings, but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [she] carries the burden of proof.").

## III. Conclusion

In sum, the Vanovers fail to present sufficient evidence upon which to base a reasonable inference that dielectric failure caused decedent's injuries. Furthermore, Dr. Tessman's testimony is inadmissible under *Daubert*. Therefore, we AFFIRM the district court's order granting summary judgment.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge

-13-